**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| JORGE ROJAS, | ) | CASE NO. 3:13-cv-02521 |
| | ) | |
| Petitioner, | ) | JUDGE CHRISTOPHER A. BOYKO |
| | ) | |
| v. | ) | MAGISTRATE JUDGE GREG WHITE |
| | ) | |
| WARDEN, ROSS CORRECTIONAL | ) | |
| INSTITUTE | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Respondent. | ) | |

Petitioner, Jorge Rojas ("Rojas"), challenges the constitutionality of his conviction in the

case of *State v. Rojas*, Lucas County Court of Common Pleas Case No. CR-2011-101378.  Rojas,

*pro se*, filed his Petition for a Writ of Habeas Corpus (ECF No. 1) pursuant to 28 U.S.C. § 2254

on November 14, 2013.  On June 19, 2014, Warden Rod B. Johnson ("Respondent") filed his

Answer/Return of Writ.[1]  (ECF No. 9.)  Rojas filed a Traverse on July 17, 2014.  (ECF No. 13.)

On the same date, he filed a Motion to Expand the Record and a Motion for an Evidentiary

Hearing, which Respondent opposed.  (ECF Nos. 12 & 14.)  Though he did not obtain leave of

Court to do so, Rojas also filed an additional Memorandum in Support of his petition on July 18,

2014.  (ECF No. 14.)  For reasons set forth in detail below, it is recommended that Rojas's

petition be DENIED.

---

[1] Respondent asserts that at the time the Answer/Return of Writ was filed, Rojas was
being held at the Ross Correctional Institute in Chillicothe, Ohio.  (ECF No. 9 at 1.)

## I.  Summary of Facts

In a habeas corpus proceeding instituted by a person in custody pursuant to the judgment of a state court, factual determinations made by state courts are presumed correct.  28 U.S.C. § 2254(e)(1); *see also Franklin v. Bradshaw*, 695 F.3d 439, 447 (6th Cir. 2012); *Montgomery v. Bobby*, 654 F.3d 668, 701 (6th Cir. 2011).  The state appellate court summarized the facts underlying Rojas's conviction as follows:

[*P2]  In June and July 2010, a group of eight or nine young men committed robberies throughout the Toledo area. The first was on June 15, 2010, at 4:45 a.m., when six men, riding in a blue Chevrolet Impala, went into the carryout of a Marathon service station on Alexis Road. Two of the intruders,  armed with shotguns, threatened the owner, Saravana Somasundaram, into giving them money from the cash drawer, as well as beer, cigarettes and other merchandise. On the way out of the store, one of the men fired a shot at the store's security camera.

[*P3]  Similarly, on June 27, 2010, at 6:15 a.m., the group robbed a Circle K carryout on West Alexis Road in the same fashion. The only difference was that the members of the group exchanged articles of clothing and stole a blue van which they used to ride up to the carryout. After the robbery, they drove several blocks in the van before switching to the Impala and driving away. No shots were fired; however the same two men, armed with shotguns, threatened both the store clerk and a customer.

[*P4]  During both of the above robberies, the men wore cut-off T-shirt sleeves on their heads to disguise their facial features. A witness stated, and the security cameras showed, one of the men wore a gray hoodie with red and white stripes on its sleeves. One of the robbers left a handprint on the door of the Circle K.

[*P5]  On July 7, 2010, the group robbed a KeyBank on West Central Road in Sylvania at 11:00 a.m. At the time, three or four employees were in the bank. Upon arriving in a stolen van, the men ran into the bank. One of them fired a shot over the head of teller Heidi Birkenkamp. Another jumped over the counter and removed $1,002.50 from Birkenkamp's drawer. When assistant manager Shawn Flaherty and another employee ran to the basement, one of the men fired the shotgun at the door as it closed behind them.

[*P6]  On July 15, 2010, at 6:00 a.m., the group, minus two of its members, robbed a Sunoco station on Monroe Street in Toledo. Using a stolen Jeep, they

drove up to the station. One of the men pointed a handgun at the clerk, Tim Green, and forced him to the floor. A total of $600 was taken from the cash register, along with some merchandise. In addition, the men took Green's wallet and cellphone. After abandoning the Jeep several blocks away, the robbers got into the Impala and drove to a garage located at 857 Kingston. After searching the abandoned Jeep, police found a shirt sleeve containing DNA consistent with two of the men.

[*P7]  On March 4, 2011, the Lucas County Grand Jury indicted appellant on 11 counts and specifications, all constituting felonies, arising from various robberies that occurred in 2010 on June 15, June 27, July 7, and July 15. The eleven counts included one count of aggravated burglary, six counts of aggravated robbery, one count of attempted murder, two counts of felonious assault, and one count of breaking and entering. Also charged in the four robberies were co-defendants Martin Cheno, Edgar Ramirez and Javier Garcia.

[*P8]  On September 23, 2011, appellant, through court-appointed counsel, filed a motion to sever pursuant to Crim.R. 14, in which appellant asserted that he would not receive a fair trial if he was not tried separately from his other co-defendants. In support, appellant argued that unfair prejudice would result because statements made by or about appellant's co-defendants could be wrongly applied to appellant and, in addition, such statements may contain prejudicial information about appellant. Appellant asked the trial court for a hearing on the motion to sever.

[*P9]  A jury trial was held on September 26 to 29, 2011. On the first day of the trial, defense counsel renewed the motion to sever, which the trial court denied, and memorialized in a judgment entry issued on September 29, 2011. On that same day, the trial court, pursuant to the state's request, entered a nolle prosequi as Counts 1, 2, 3 and 10 of the original indictment, and the attending firearm specifications, as well as the gang specifications attached to the remaining Counts 4, 5, 6, 7, 8, 9 and 11. n1

[*P10]  At trial, the state presented witnesses to the actual robberies as follows: Marathon station owner Saravana Somasundaram testified that five men, two of which carried guns, entered the store and ordered him to open the register. After taking $800 in cash plus beer and cigarettes, they fired one shot at the ceiling and left. They wore masks, which covered everything except their eyes. They appeared to be white. One gunman wore a brown jacket and the other wore a black hoodie.

[*P11]  Circle K assistant manager Gloria Case testified that five men got out of a green van and entered the store. They carried a "big like book bag." One put a shotgun to the back of Case's head. Case also testified that one man wore a gray hoodie and a red mask, one wore a "dark" hoodie with a red mask, two wore gray

hoodies, and one wore a hoodie with red and white stripes on it. As the men left, one left the print of his left palm on the glass door. Circle K customer Tammy Davis testified that she saw five guys with ski masks and shotguns, and gave $20 to one of the guys with a gun. Davis did not see the men take anything from the store. She saw a dark minivan.

[*P12]  KeyBank teller Heidi Birkenkamp testified that five men wearing masks exited a dark blue or green Dodge Caravan and entered the bank. One was wearing a Carhartt jacket and a red bandanna, and two or three had large guns. Birkenkamp stated that the man in the Carhartt jacket fired one shot into the ceiling over her head to stop her from setting off the silent alarm. They also fired at the bank's back door. Birkenkamp stated that all the men wore hoodies, masks and gloves, spoke "good English" and were possibly of "Arabic" descent. KeyBank employees Carmen Whityam and Shawn Flaherty both testified that they were in the bank's copy room when they heard a gunshot. Flaherty opened the copy room door and they saw five men wearing dark clothes and masks.  One wore a Carhartt jacket and carried a gun. Whityam and Flaherty both stated that the man in the Carhartt jacket fired a shot at the door as Flaherty closed it.

[*P13]  Sunoco cashier Timothy Green testified that five men came into the store. Two wore Carhartt jackets, and one carried a revolver. Green said the men took $600 in cash and merchandise from the store. He also gave them his wallet, which contained credit cards and $200 in cash. On cross-examination, Green said one of the men may have been "black;" however, they all wore masks that covered their faces up to the bridge of their noses.

[*P14]  The state also presented testimony by Toledo Police Detectives Scott Smith, Jay Gast and Terry Cousino. Smith testified that the print on the glass door at Circle K, which appeared to be fresh, belonged to Raul Moya. Cousino testified that police searched a home and garage at 847 Kingston Ave on July 21, 2010, pursuant to a search warrant. Items found in the garage were black "dot" gloves, red and blue bandannas, a tan Carhartt jacket, blue and black T-shirt sleeves, a gray ECHO hoodie with stripes on the sleeves, a light blue ECHO hoodie, and a gray T-shirt with the sleeves cut off. Cousino stated that evidence collected at the garage was depicted in photos taken from the different robberies.  On cross-examination, Cousino testified that the clothing and gloves could have been worn while repairing automobiles at the garage.  On redirect, Cousino testified that the gray hoodie with red and white stripes was similar to one shown in the video of the Circle K robbery.

[*P15]  Sylvania Township officer Jim Rettig testified that he found gloves and a dark hoodie in the KeyBank parking lot after the robbery. He also found a KeyBank business card, a dark cloth and a book bag in the Dodge Caravan, which was parked two to three blocks away from KeyBank. On cross-examination,

Rettig testified that the blue T-shirt sleeve had a mix of DNA from Victor Cheno, appellant's co-defendant, Ramirez, and an unknown individual.

[*P16]  Raul Moya testified at trial that he was part of the group that robbed the Marathon station, the Circle K, KeyBank and the Sunoco station. Moya stated that, at the time of trial, he was 17 years old. Moya further stated that he was identified by the palm print he made on the glass door of the Circle K, and he was initially charged along with appellant, Ramirez and several other men;  [**10] however, he was granted immunity in exchange for his testimony at trial.

[*P17]  Moya testified that all the robberies were planned in the garage of appellant's home, at 847 Kingston. Moya said that appellant and Ramirez were armed, and that all the men were disguised with hoodies, long sleeves, sweats, and face masks made from T-shirt sleeves. Moya also stated they all wore latex gloves with dots that were also used by appellant to fix cars at his garage. Moya said they went to the robberies in appellant's navy blue Impala, and that a driver would stay in the Impala while the rest of the men robbed the stores and the bank. Moya testified that appellant shot at the security camera in the Marathon store. It was appellant's job to hold a shotgun while the others took money and placed other items in a bag. Moya further stated that, after each robbery, the group went back to 847 Kingston to divide up the money and the stolen merchandise.

[*P18]  Moya stated that the men "switched up" their clothes between the various robberies. He described each of the four robberies and the differences between them in detail. He said that appellant pointed a shotgun at the Circle K clerk and told her to open the cash register. He said that sometimes the group would get into a stolen vehicle and drive several blocks to meet Garcia in the Impala before going back to 847 Kingston. Moya identified appellant as the person who shot at the ceiling and the back door during the KeyBank robbery. He also said that appellant had a handgun during the Sunoco robbery, but did not fire the weapon. Moya identified items used during the robberies, i.e., masks, jackets, and various bags, from photographs of evidence recovered from the crime scenes and the garage at 847 Kingston. Moya stated that he left a palm print on the door of the Circle K because he only had one glove that day.

[*P19]  On cross-examination, Ramirez's defense attorney began to question Moya concerning the robbery of an ATM machine on July 18, 2010. At that point, the prosecutor objected, on the basis that the ATM robbery, and the attempted shooting of a Toledo police officer during that robbery, was unrelated to the charges pending against appellant and Ramirez. Ramirez's counsel replied that he intended to question Moya's credibility because Moya testified under oath that he was with Ramirez on that day when, in fact, there is evidence that Ramirez  was in jail at that time. Appellant's counsel then stated that she would not object to questioning Moya's credibility in general. The court then overruled the

prosecutor's objection, and questioning continued.

[*P20]  Ramirez's counsel read into the record a portion of Moya's testimony concerning events surrounding the ATM robbery, to refresh his memory. In that testimony, Moya stated under oath that he was with Ramirez on July 18, 2010. Moya further stated that he, Ramirez, appellant, and several others were "hanging out" at 847 Kingston, smoking marijuana and drinking beer. Moya also recalled being interviewed by Gast for three to five hours on January 6, 2011, during which Moya repeatedly lied to protect Martin Cheno, another member of the group who was the father of Moya's sister's baby. Moya also stated that he lied during a second interview for that same reason. However, Moya said that he changed his mind later and began telling the truth to investigators, to keep them from involving his younger brother in the investigation.

[*P21]  On cross-examination by appellant's counsel, Moya testified that he was arrested on July 19, 2010, and that appellant was with him at that time. Moya stated that he was charged with attempted murder, felonious assault and aggravated robbery in relation to the ATM robbery, and that he was offered a shorter sentence in return for his testimony concerning the other four robberies.

[*P22]  Moya also testified that the charges were made because he shot at a cop during the ATM robbery. At that point, appellant's counsel objected; however, the trial court found that the door was open for that line of questioning and overruled the objection. Thereafter, Moya recounted the ATM robbery in detail, and named appellant as a participant in that robbery. Appellant's counsel did not object to the detailed account of the robbery; however, the trial court interrupted the testimony twice to question its relevance, and noted that no objections were made to this line of questioning. The trial court also gave the jury an instruction limiting the application of Moya's testimony as to the ATM robbery as follows:

> As to other acts, that evidence is received for only a limited purpose, it is
> not received and you may not consider it to prove the character of the
> individual defendants in order to show that they acted in conformity or in
> accordance with the character relative to the allegations contained in the
> seven counts of the indictment for which each stands.  You can only use it
> for purposes of testing the credibility of this witness [Moya] and for no
> other purpose.

[*P23]  After the trial court's limiting instruction, Moya testified as more details regarding another co-defendant, Martin Cheno, with whom Moya's sister had a baby. The trial court again questioned the relevance of the questioning, and asked the jury to disregard it. Thereafter, the prosecutor questioned Moya about the planning of the ATM robbery. The trial court again interrupted and questioned the relevance, noting that no objection was made to the question. Appellant's counsel

responded: "I'll object, judge, if you want me to." Moya then testified that, even though he lied before about details of the four robberies, he eventually decided "it was best at the end to come forward" and tell the truth.

 [*P24]  After Moya's testimony, appellant's counsel moved for a mistrial. In support of her motion, counsel referred to her motion to sever, in which she mentioned the potential for evidence to be elicited in Ramirez's defense that would be harmful to appellant. Defense counsel stated that she would not have [**15] moved for a mistrial but for Moya's testimony. After reviewing appellant's motion to sever, the trial court noted that no objections were made to Moya's testimony and, in fact, the court stopped the questioning on its own initiative and gave a limiting instruction because it was not relevant to the charges against appellant and Ramirez. Thereafter, the motion for a mistrial was denied.

[*P25]  When the trial resumed, testimony as to DNA analysis was presented by Ohio Bureau of Criminal Identification and Investigation ("BCI") employee Cassandra Agosti, who testified that she tested a black shirt sleeve, a black hoodie, and a Carhartt jacket taken in connection with the Sunoco robbery and compared them to "standards" given by Ramirez and appellant. Agosti stated that appellant's DNA was not on any of those items. She also testified that a blue and black cloth taken in connection with the Marathon robbery contained a mixture of DNA; however, appellant was the major contributor.

[*P26]  Toledo Police Detective William Jay Gast testified that he investigated all four robberies, as well as the ATM robbery attempt on July 19, 2010, and he was able to tie all the robberies together using cell phone records,  analysis of the video evidence, and items seized during the search of 847 Kingston, along with DNA evidence that was submitted later. Gast stated that the "MOs" employed in all the robberies "sure seemed to match." Gast also stated that Moya provided much information, and that police went to "great lengths" to "try to substantiate his information that [Moya] provided in his statements." Gast acknowledged that Moya initially lied to police to protect another co-defendant to whom Moya had family ties; however, enough evidence was obtained to substantiate Moya's claims.

[*P27]  Testimony regarding the collection and analysis of video evidence was presented by Sylvania Township Detective William Hunt and Toledo Police Officers John Mattimore, Mark Johnson and Randall Navarro. After they were authenticated, videos of all four robberies were played for the jury.

[*P28]  As part of Ramirez's defense, Lucas County Sheriffs Department Lieutenant James Williams then testified that Ramirez was arrested on an outstanding traffic warrant on July 18, 2010, and was booked into the Lucas County jail at 12:25 p.m. on that date. Williams stated that Ramirez remained in

police custody until he was released at 7:55 p.m. on July 19, 2010. Julie Heinig, laboratory director for the DNA Diagnostic Center in Cincinnati, testified that items she tested for DNA contained a mixture of various contributors and that, although Ramirez could be excluded some of the items, neither he nor appellant could be excluded from all of them.

[*P29]  Appellant and Ramirez chose not to testify on their own behalf. Appellant did not call any witnesses to testify in his defense, and appellant's defense counsel did not renew the motion for an acquittal or the motion to sever. After closing arguments, the trial court instructed the jury as to the elements of the crimes charged and the applicable law. After a period of deliberation, the jury found appellant guilty of five counts of complicity to commit aggravated robbery (Counts 1, 2, 3, 4, and 7), with a firearm specification for each count, and two counts of complicity to commit felonious assault (Counts 5 and 6), with firearm specifications for each count.

*State v. Rojas*, 2013 Ohio App. LEXIS 1710, 2013-Ohio-1835 at ¶¶2-P29 (Ohio Ct. App., May 3, 2013) (footnotes omitted).

## II.  Procedural History

### A.  Conviction

On March 4, 2011, a Lucas County Grand Jury charged Rojas, along with co-defendants Martin Cheno and Edgar Ramirez, with one count of aggravated burglary in violation of Ohio Revised Code ("O.R.C.") § 2911.11(A)(2), six counts of aggravated robbery in violation of O.R.C. § 2911.01(A)(1), two counts of felonious assault in violation of O.R.C. § 2903.11(A)(2), one count of attempted murder in violation of O.R.C. § 2903.02, and one count of breaking and entering in violation of O.R.C. § 2911.12(A).  (ECF No. 11-3, Exh. 3.)  All charges, save for the last, carried firearm and criminal gang specifications.[2]  *Id.*

---

[2]  At trial, the State proceeded only on seven of the eleven charges, as the aggravated burglary, breaking and entering, one of the felonious assault charges and one of the aggravated robbery charges were dropped.  (ECF No. 11-9, Tr. 18-22.)  In addition, the criminal gang specifications were eliminated.  *Id.*

After a number of continuances, Rojas, through counsel, filed a motion to sever three days prior to the scheduled trial date.[3]  (ECF No. 11-8, Exh. 8.)  Prior to trial, the court heard argument and ultimately denied the motion to sever.  (ECF No. 11-9, Tr. 15-17.)  On September 29, 2011, a jury found Rojas guilty as charged, except that Rojas was found guilty of complicity to commit felonious assault rather than complicity to commit attempted murder.  (ECF No. 11-16.)  The trial court sentenced Rojas to an aggregate prison term of 71 years.  *Id.*

**B.  Direct Appeal**

On October 7, 2011, Rojas, through new counsel, filed a Notice of Appeal with the Court of Appeals for the Sixth Appellate District ("state appellate court") raising the following assignments of error:

1.  The trial court erred in failing to grant Appellant's motion to sever.

2.  The trial court erred to the prejudice of the Appellant for failing to declare a mistrial upon Appellant's [sic] request, thereby denying Appellant due process of law under the Fifth and Fourteenth Amendments to the U.S. Constitution and sections 10 and 16 of the Ohio Constitution.

3.  The trial court erred to the prejudice of the Appellant when it denied his right to dismiss his attorney and provide new counsel as contrary to the Sixth Amendment of the United States Constitution and Section 10, Article l of the Ohio Constitution.

4.  Appellant was denied effective assistance of trial counsel.

5.  The verdicts of the jury were against the manifest weight of the evidence.

6.  The cumulative effect of the errors committed by the trial court violated the Appellant's right to a fair trial.

7.  The trial court should have merged several of the sentences as part of the

---

[3]  The trial was scheduled to commence on Monday, September 26, 2011.  The motion to sever was filed the previous Friday afternoon.  (ECF No. 11-8, Exh. 8.)

same transaction or occurance [sic].

(ECF No. 11, Exhs. 17 & 19.)

After the State filed its brief, Rojas, *pro se*, filed a "Motion for Leave to Intervene with Additional Errors." (ECF No. 11-21, Exh. 21.)  In the same motion, Rojas made additional observations regarding the seven assignments of error raised by appellate counsel and also sought to raise the following additional assignments of error:

8.    Trial Court Plainly Erred To The Prejudice Of Appellant By Imposing Sentence Beyond Statutory Maximum As Written By Ohio Legislature, And Constituting Double Jeopardy In Violation of THE FIFTH AMENDMENT, U.S. CONSTITUTION.

9.    Trial Court Committed Prejudicial Error By Admitting Perjured Testimony In *Crimen Falsi* By Codefendant And False Evidences [sic] Under Oh. Evid. R. 103(C), 402, 404(B), 608(B)(1), 613(B) And 616 … Which Constituted A Fraud Upon Court To Obtain A Conviction VIOLATING THE SIXTH AND FOURTEENTH AMENDMENT, U.S. CONSTITUTION.

10.   Trial Court Committed Prejudicial Error By Admitting Irrelevant Evidence Violating Oh. Evid. R. 402, 401, And 404(B), Violating The 6th And 14th. Amendments, U.S. Constitution, [As Well As The 5th By Way Of Forcing Self-Incrimination Upon Appellant].

(ECF No. 11-21, Exh. 21.)

On October 18, 2012, the state appellate denied Rojas's motion to intervene finding that a defendant has no right a "hybrid form of representation" under either the Ohio or federal constitutions.  (ECF No. 11-23, Exh. 23.)

On May 3, 2013, Rojas's conviction was affirmed.  *Rojas*, 2013-Ohio-1935 at ¶¶60-61. However, the case was remanded for a limited resentencing, because the trial court had sentenced Rojas to a nine-year prison term for Count 6, complicity to commit felonious assault, for which the maximum sentence was eight years.  *Id.*

-10-

On May 24, 2013, Rojas, *pro se*, filed a Notice of Appeal with the Supreme Court of Ohio.  (ECF No. 11-27, Exh. 27.)  In his brief, Rojas essentially raised the same seven assignments of error counsel raised below together with his *pro se* assignments of error that the appellate court refused to consider.  (ECF No. 11-28, Exh. 28.)  In addition, Rojas asserted that the state appellate court violated the Sixth and Fourteenth Amendments to the U.S. Constitution when it denied his *pro se* motion to intervene, and he also asserted a claim of ineffective assistance of appellate counsel.  *Id.*

On July 24, 2013, the Ohio Supreme Court declined to accept jurisdiction of the appeal pursuant to S. Ct. Prac. R. 7.08(B)(4).  (ECF No. 11-29, Exh. 29.)

**C.   Application to Reopen Appeal**

On May 28, 2013, Rojas also filed an application to reopen his appeal pursuant to Ohio App. R. 26(B).  (ECF No. 11-30, Exh. 30.)  In his brief, Rojas essentially reargued the seven assignments of error raised by his appellate counsel on direct appeal, as well as the *pro se* assignments of error not considered by the appellate court.  *Id.*  Rojas also alleged that appellate counsel was ineffective because he failed to thoroughly argue the errors raised and failed to raise the three additional assignments of error Rojas sought to raise *pro se*.  *Id.*

The state appellate court denied the application to reopen.  (ECF No. 11-32, Exh. 32.)  The court explained that the first seven assignments of error, which were considered on direct appeal, were barred by *res judicata*.  The eighth assignment of error was denied as not well taken; the ninth assignment of error was denied as barred by *res judicata*; and, the tenth was denied as failing to raise a colorable claim of ineffective assistance of appellate counsel.  *Id.* at 7-8.

Rojas did not appeal this decision.

-11-

### D.    Federal Habeas Petition

On November 14, 2013, Rojas filed a Petition for Writ of Habeas Corpus and asserted the

following grounds for relief:

Ground One: The trial court erred in failing to grant Appellant['[]s motion to sever.

Ground Two: The trial court erred to the prejudice of Appellant for failing to declare a mistrial upon request, denying due process, under 5th & 14th Amendments, U.S. constitution.

Ground Three: Trial court erred to prejudice of Appellant by denying right to dismiss his attorney and provide new counsel, contrary to 6th Amendment.

Ground Four: Appellant was denied effective assistance of counsel at trial.

Ground Five: The verdicts of the jury were against the manifest weight of the evidence.

Ground Six: The cumulative effect of errors violated the right to a fair trial.

Ground Seven: The trial court should have merged several of the sentences as a part of the same transaction or occurance [sic].

Ground Eight: Trial court committed prejudicial error by admitting perjured testimony in *crimen falsi* by co-defendant, and false evidences [sic] under Ohio Evidence Rules 103(c), 402, 404(b), 608(b)(1), 613(b), & 616 … which constituted a fraud upon court to obtain a conviction.

Ground Nine: Trial court committed prejudicial error by admitting irrelevant evidence, violating Ohio Evidence Rules 401, 402, & 404(b), under the 6th & 14th Amendments.

Ground Ten: The Sixth District Court of Appeals violated the 6th & 14th Amendments … by failing to allow a *pro se* motion to intervene.

Ground Eleven: Appellant was denied effective assistance of appeals counsel.

(ECF No. 1.)

### III.  Exhaustion and Procedural Default

**A.    Exhaustion Standard**

Petitioners must exhaust their state remedies prior to raising claims in federal habeas corpus proceedings.  *See* 28 U.S.C. § 2254(b),( c).  This requirement is satisfied "when the highest court in the state in which the petitioner was convicted has been given a full and fair opportunity to rule on the petitioner's claims."  *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990).  However, if relief is no longer available in state court, exhaustion can be rendered moot:  "If no remedy exists, and the substance of a claim has not been presented to the state courts, no exhaustion problem exists; rather, it is a problem of determining whether cause and prejudice exist to excuse the failure to present the claim in the state courts."  *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994); *see Buell v. Mitchell*, 274 F.3d 337, 349 (6th Cir. 2001).

**B.    Procedural Default Standard**

Federal courts will not consider the merits of procedurally defaulted claims, unless the petitioner demonstrates cause for the default and prejudice resulting therefrom, or where failure to review the claim would result in a fundamental miscarriage of justice.  *See Lundgren v. Mitchell*, 440 F.3d 754, 763 (6th Cir.2006) (*citing Wainwright v. Sykes*, 433 U.S. 72, 87 (1977)). A claim may become procedurally defaulted in two ways. *Id.*  First, a petitioner may procedurally default a claim by failing to comply with state procedural rules in presenting his claim to the appropriate state court.  *Id.*; *see also Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986). If, due to petitioner's failure to comply with the procedural rule, the state court declines to reach the merits of the issue, and the state procedural rule is an independent and adequate

-13-

grounds for precluding relief, the claim is procedurally defaulted.[4] *Id.*

Second, a petitioner may also procedurally default a claim by failing to raise and pursue that claim through the state's "ordinary appellate review procedures."  *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999).  If, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim, it is procedurally defaulted. *Engle v. Isaac*, 456 U.S. 107, 125 n. 28 (1982); *see also Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991); *Lovins*, 712 F.3d at 295 ("a claim is procedurally defaulted where the petitioner failed to exhaust state court remedies, and the remedies are no longer available at the time the federal petition is filed because of a state procedural rule.")  This second type of procedural default is often confused with exhaustion. Exhaustion and procedural default, however, are distinct concepts.  AEDPA's exhaustion requirement only "refers to remedies still available at the time of the federal petition." *Engle*, 456 U.S. at 125 n. 28.  Where state court remedies are no longer available to a petitioner because he failed to use them within the required time period, procedural default and not exhaustion bars federal court review.  *Id.*  In Ohio, a petitioner is not entitled to raise claims in post-conviction proceedings where those claims could have been raised on direct appeal.  *Id.*

---

[4]  In *Maupin*, the Sixth Circuit established a four-step analysis to determine whether a claim is procedurally defaulted.  785 F.2d at 135.  Under this test, the Court decides (1) whether the petitioner failed to comply with an applicable state procedural rule, (2) whether the state courts actually enforced the state procedural sanction, (3) whether the state procedural bar is an "independent and adequate" state ground on which the state can foreclose federal review, and (4) whether the petitioner has demonstrated "cause" and "prejudice."  *Id*. at 138-39; *Barkley v. Konteh*, 240 F.Supp.2d 708 (N.D. Ohio 2002).  "In determining whether a state court actually enforced a procedural rule, we apply the 'plain statement' rule of *Michigan v. Long*, 463 U.S. 1032, 103 S. Ct. 3469, 77 L. Ed. 2d 1201 (1983)."  *Lovins v. Parker*, 712 F.3d 283, 296 (6th Cir. 2013) ("a procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on the procedural bar.") (citations omitted).

Thus, if an Ohio petitioner failed to raise a claim on direct appeal, which could have been raised, the claim is procedurally defaulted.  *Id.*

A claim is adequately raised on direct appeal if it was "fairly presented" to the state court. To fairly present a claim to a state court a petitioner must assert both the legal and factual basis for his claim.  *See McMeans v. Brigano*, 228 F.3d 674, 681 (6ᵗʰ Cir. 2000).  Accordingly, a "petitioner must present his claim to the state courts as a federal constitutional issue--not merely as an issue arising under state law."  *Koontz v. Glossa*, 731 F.2d 365, 368 (6ᵗʰ Cir. 1984).  A petitioner can take four actions in his brief which are significant to the determination as to whether a claim has been fairly presented as a federal constitutional claim: "(1) reliance upon federal cases employing constitutional analysis; (2) reliance upon state cases employing federal constitutional analysis; (3) phrasing the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) alleging facts well within the mainstream of constitutional law."  *Newton v. Million*, 349 F.3d 873, 877 (6ᵗʰ Cir. 2003).

A petitioner's procedural default, however, may be excused upon a showing of "cause" for the procedural default and "actual prejudice" from the alleged error.  *See Maupin*, 785 F.2d at 138-39.  "Demonstrating cause requires showing that an 'objective factor external to the defense impeded counsel's efforts to comply' with the state procedural rule."  *Franklin v. Anderson*, 434 F.3d 412, 417 (6ᵗʰ Cir. 2006) (*quoting Murray v. Carrier*, 477 U.S. 478, 488 (1986)). Meanwhile, "[d]emonstrating prejudice requires showing that the trial was infected with constitutional error."  *Id.*  Where there is strong evidence of a petitioner's guilt and the evidence supporting petitioner's claim is weak, the actual prejudice requirement is not satisfied.  *See*

*United States v. Frady*, 456 U.S. 152, 172 (1982); *Perkins v. LeCureux*, 58 F.3d 214, 219-20 (6th Cir. 1995); *Rust v. Zent*, 17 F.3d 155, 161-62 (6th Cir. 1994).  Prejudice does not occur unless petitioner demonstrates "a reasonable probability" that the outcome of the trial would have been different.  *See Mason v. Mitchell*, 320 F.3d 604, 629 (6th Cir. 2003) (*citing Strickler v. Greene*, 527 U.S. 263, 289 (1999)).

Finally, a petitioner's procedural default may also be excused where a petitioner is actually innocent in order to prevent a "manifest injustice."  *See Coleman v. Thompson*, 501 U.S. 722, 749-50 (1991).  Conclusory statements are not enough – a petitioner must "support his allegations of constitutional error with new reliable evidence-whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial."  *Schlup v. Delo*, 513 U.S. 298, 324 (1995);  *See Jones v. Bradshaw*, 489 F.Supp.2d 786, 807 (N.D.Ohio 2007).

### 1.  Application to the Petition

The Respondent asserts that grounds eight and nine of the habeas petition are procedurally defaulted.  Rojas attempted to raise these two grounds on direct appeal, as assignments of error nine and ten when he filed a *pro se* motion to intervene.  (ECF No. 11-21, Exh. 21.)  As stated above, the state appellate court expressly denied Rojas's motion for leave finding as follows:

> The Ohio Supreme Court has held that "[a] defendant has no right to a 'hybrid' form of representation wherein he is represented by counsel, but also acts simultaneously as his own counsel."  *State v. Keenan*, 8l Ohio St.3d 133, 138, 689 N.E.2d 929 (1998), *citing McKaskle v. Wiggins*, 465 U,S. 168, 183, 104 S.Ct. 944, 79 L.Ed.2d 122 (1984).  *See also State v. Thompson*, 33 Ohio St.3d 1, 6, 514 N.E.2d 407, 414 (1987). ("Neither the United States Constitution , the Ohio Constitution nor case law mandates *** hybrid  representation.")  Ohio appellate courts, citing *McKaskle*, and *Thompson*, have held that an appellate court is not required to consider a request to allow an appellant who is represented by counsel to also raise issues on appeal *pro se*.  *Toledo v. Dandridge*, 6th Dist. No.

-16-

> L-10-1333, 2011-Ohio-3712, ¶18, and *State v. Westley*, 8th Dist. No. 97650,
> 2012-Ohio-357l, ¶14.  In addition, the Appellate Rules do not provide for such a
> request.

(ECF No. 11-23, exh. 23.)

The state appellate court clearly found that, under Ohio's state court rules, Rojas was not

entitled to raise supplemental assignments of error when represented by counsel.  The state

appellate court plainly enforced that rule, and notably did not consider any of the supplemental

assignments of error on their merits, as they are completely omitted from the court's ultimate

decision on direct appeal.  *Rojas*, 2013-Ohio-1835.  The question remains whether the

prohibition against hybrid representation on appeal constitutes an "independent and adequate"

state ground on which the state can foreclose federal review.

As pointed out by Respondent, this petition is similar in respects to one recently decided by

another court of this District:

> Starks attempted to raise these grounds for relief *pro se* on appeal when he was
> already represented by an attorney.  Because such hybrid representation is not
> permitted in Ohio, respondent concludes, those claims have been procedurally
> defaulted.
>
> Starks raised his twenty-sixth and twenty-seventh, and twenty-eighth grounds for
> relief in the state appellate court during his appeal of the trial court's May 29,
> 2007 ruling denying his motion to supplement the record.  He raised the claims in
> a *pro se* appellate motion.  The state appellate court denied his *pro se* motion
> because Starks was represented by an attorney and had no right to hybrid
> representation.  Ohio regularly enforces its rule that parties may not engage in
> hybrid representation. *See, e.g., State v. Tenace*, 109 Ohio St. 3d 451, 2006 Ohio
> 2987, 849 N.E.2d 1 (2006); *State v. Minkner*, 194 Ohio App. 3d 694, 2011 Ohio
> 3106, 957 N.E.2d 829 (June 24, 2011); *State v. Pilgrim*, 184 Ohio App. 3d 675,
> 2009 Ohio 5357, 922 N.E.2d 248 (2009); *State v. Martin*, 103 Ohio St. 3d 385,
> 2004 Ohio 5471, 816 N.E.2d 227 (2004); *State v. Taylor*, 98 Ohio St. 3d 27, 2002
> Ohio 7017, 781 N.E.2d 72 (2002); *State v. Cassano*, 96 Ohio St. 3d 94, 2002
> Ohio 3751, 772 N.E.2d 81 (2002); *State v. Prince*, 2012 Ohio 4111, 2012 WL
> 3893768 (2012); *State v. Capers*, 2011 Ohio 2443, 2011 WL 1992034 (2011);
> *State v. Perry*, 2011 Ohio 2242, 2011 WL 1848889 (2011); *State v. Edmonds*,

-17-

2011 Ohio 1282, 2011 WL 946407 (2011); *State v. Smith*, 2010 Ohio 4507, 2010 WL 3722257 (2010); *State v. Spung*, 2010 Ohio 3294, 2010 WL 2751228 (2010); *State v. Childs*, 2010 Ohio 1814, 2010 WL 1660444 (2010); *State v. Hill*, 2010 Ohio 1670, 2010 WL 1510199 (2010); *State v. Rhodes*, 2010 Ohio 1207, 2010 WL 1100068 (2010); *State v. Brime*, 2009 Ohio 6572, 2009 WL 4809645 (2009); *State v. Rice*, 2009 Ohio 5419, 2009 WL 3255249 (2009); *State v. Bonner*, 2009 Ohio 2157, 2009 WL 1263101 (2009); *State v. Clark*, 2008 Ohio 5208, 2008 WL 4456996 (2008); *State v. Kendrick*, 2007 Ohio 6136, 2007 WL 3409300 (2007); State v. Gaskins, 2007 Ohio 4103, 2007 WL 2296454 (2007); *State v. Ahmed*, 2006 Ohio 7069, 2006 WL 3849862 (2006); *State v. West*, 2006 Ohio 5834, 2006 WL 3159354 (2006); *State v. Davis*, 2006 Ohio 5039, 2006 WL 2780177 (2006); *State v. Greenleaf*, 2006 Ohio 4317, 2006 WL 2390253 (2006); State v. Haines, 2005 Ohio 5707, 2005 WL 2789065 (2005); State v. Bell, 2005 Ohio 2418, 2005 WL 1163257 (2005); *State v. Farmer*, 2005 Ohio 2279, 2005 WL 1092370 (2005); and *State v. Sweitzer*, 2000 Ohio App. LEXIS 3204, 2000 WL 973416 (Ohio App. July 14, 2000). The Sixth Circuit has found a similar statute in Tennessee to be an adequate and independent state ground to foreclose habeas review. *Hill v. Carlton*, 399 Fed. Appx. 38, 2010 WL 3272800 (6th Cir. 2010).n5 Consequently, Ohio's rule against hybrid representation is an adequate and independent state ground sufficient to foreclose habeas review, and that rule was enforced against Starks. Starks has, therefore, procedurally defaulted his twenty-sixth through twenty-eighth grounds for relief.

*Starks v. Sheldon*, 2013 U.S. Dist. LEXIS 109547, 70-73 (N.D. Ohio Apr. 2, 2013) (footnotes omitted), *adopted by* 2013 U.S. Dist. LEXIS 109542 (N.D. Ohio Aug. 5, 2013).

This Court agrees with the *Starks* decision's finding that the State of Ohio regularly enforces its prohibition against raising claims on appeal in a "hybrid" fashion. Furthermore, while Rojas attempted to raise the same claims contained in grounds eight and nine before the Ohio Supreme Court on direct appeal, there is no indication that those claims were considered on the merits. *See, e.g., Hamilton v. Gansheimer*, 536 F. Supp.2d 825, 832 (N.D. Ohio 2008) (finding that under Sixth Circuit precedent, a habeas court "assumes the Ohio Supreme Court would have enforced the procedural bar against Petitioner" even where the decision amounts to a summary denial); *Adams v. Bradshaw*, 484 F. Supp.2d 753, 771 (N.D. Ohio 2007)("in determining whether a state court has relied on a procedural rule to bar review of an issue, [a

-18-

habeas court] examines the latest reasoned opinion of the state courts and presumes that later courts enforced the bar instead of rejecting the claim on the merits.")

Therefore, Rojas's eighth and ninth grounds for relief are procedurally defaulted unless he can show sufficient cause and prejudice to excuse the default.  In his response, Rojas plainly believes he properly raised all his grounds for relief, and appears to suggest that any default resulted from appellate counsel's alleged ineffectiveness.  (ECF No. 13 at 8-9.)  Ineffective assistance of appellate counsel can constitute cause sufficient to excuse a procedural default. *Landrum v. Mitchell*, 625 F.3d 905, 916 (6th Cir.2010) *cert. denied*, 132 S. Ct. 127, 181 L. Ed. 2d 49 (2011); *Howard v. Bouchard*, 405 F.3d 459, 478 (6th Cir. 2005); *Murray v. Carrier*, 477 U.S. 478, 492, 106 S. Ct. 2639, 91 L. Ed. 2d 397 (1986).  "However, 'an ineffective-assistance-of-counsel claim asserted as cause for the procedural default of another claim can itself be procedurally defaulted.'" *Id*. (*quoting Edwards v. Carpenter*, 529 U.S. 446, 453, 120 S. Ct. 1587, 146 L. Ed. 2d 518 (2000)).

In Ohio, defendants claiming ineffective assistance of appellate counsel must apply to the Ohio Court of Appeals for reopening of the direct appeal, as Rojas did.  Though Rojas did not appeal the state appellate court's decision denying his application to reopen, he did argue ineffective assistance of appellate counsel on direct appeal to the Ohio Supreme Court.  (ECF No. 11-28, Exh. 28.)  However, as discussed in Part IV, Section F, *infra*, there is no merit to Rojas's claim that appellate counsel was ineffective.  As such, it cannot serve as cause to excuse his default.  Finally, while a procedural default may be excused to prevent a "manifest injustice," Rojas has not raised a credible claim of actual innocence.

### IV. Review on the Merits

This case is governed by the Antiterrorism and Effective Death Penalty Act of 1996

("AEDPA"), 28 U.S.C. § 2254. *See Lindh v. Murphy*, 521 U.S. 320, 326-27, 337 (1997). The

relevant provisions of AEDPA state:

> An application for a writ of habeas corpus on behalf of a person in custody
> pursuant to the judgment of a State court shall not be granted with respect to any
> claim that was adjudicated on the merits in State court proceedings unless the
> adjudication of the claim–
>
>> (1) resulted in a decision that was contrary to, or involved an unreasonable
>> application of, clearly established Federal law, as determined by the
>> Supreme Court of the United States; or
>>
>> (2) resulted in a decision that was based on an unreasonable determination of
>> the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (1996).

Clearly established federal law is to be determined by the holdings of the United States

Supreme Court. *See Parker v. Matthews,* 132 S. Ct. 2148, 2012 WL 2076341, *6 (U.S. Jun. 11,

2012); *Renico v Lett,* 559 U.S. –, 130 S.Ct. 1855, 1865-1866 (2010); *Williams v. Taylor*, 529

U.S. 362, 412 (2000); *Ruimveld v. Birkett*, 404 F.3d 1006, 1010 (6th Cir. 2005). However, an

explicit statement by the Supreme Court is not mandatory; rather, "the legal principles and

standards flowing from [Supreme Court] precedent" also qualify as "clearly established law."

*Ruimveld*, 404 F.3d at 1010 (*quoting Taylor v. Withrow*, 288 F.3d 846, 852 (6th Cir. 2002)) The

Supreme Court has indicated, however, that circuit precedent does not constitute "clearly

established Federal law, as determined by the Supreme Court." *Parker*, 2012 WL 2076341, *6;

*Howes v. Walker,* 132 S.Ct. 2741, 2012 WL 508160 (2012).

A state court's decision is contrary to clearly established federal law "if the state court

-20-

arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. at 413.  By contrast, a state court's decision involves an unreasonable application of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*.  However, a federal district court may not find a state court's decision unreasonable "simply because that court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411.  Rather, a federal district court must determine whether the state court's decision constituted an objectively unreasonable application of federal law.  *Id.* at 410-12.  "This standard generally requires that federal courts defer to state-court decisions."  *Strickland v. Pitcher*, 162 Fed. Appx. 511, 516 (6th Cir. 2006) (*citing Herbert v. Billy*, 160 F.3d 1131, 1135 (6th Cir. 1998)).

In *Harrington v. Richter*, ─── U.S. ────, 131 S.Ct. 770, 178 L.Ed.2d 624 (2011), the Supreme Court held that as long as "fairminded jurists could disagree on the correctness of the state court's decision," relief is precluded under the AEDPA.  *Id.* at 786 (internal quotation marks omitted).  The Court admonished that a reviewing court may not "treat[ ] the reasonableness question as a test of its confidence in the result it would reach under *de novo* review," and that "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable."  *Id.* at 785.  The Court noted that Section 2254(d) "reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems" and does not function as a "substitute for ordinary error correction through appeal."  *Id.* (internal quotation

marks omitted).  Therefore, a petitioner "must show that the state court's ruling ... was so lacking

in justification that there was an error well understood and comprehended in existing law beyond

any possibility for fairminded disagreement."  *Id.* at 786–87.  This is a very high standard, which

the Supreme Court readily acknowledged.  *See id.* at 786 ("If this standard is difficult to meet,

that is because it is meant to be.")

**A.    Ground Two: Failure to Grant Mistrial**[5]

    Rojas contends that he was denied due process and that his Fifth and Fourteenth

Amendment rights were violated when the trial court denied his motion for a mistrial.  (ECF No.

1.)  Notably, while Rojas's appellate counsel also characterized the mistrial denial as a violation

of due process and Rojas's federal constitutional rights, the assignment of error was argued

solely on the basis of state court decisions.  (ECF No. 11-19, Exh. 19 at 22-23.)

    As clearly explained by another district court within the Sixth Circuit, "[t]he question on

habeas corpus review is not whether the trial court abused its discretion or should have declared

a mistrial, but whether the state appellate court's determination that the trial court did not abuse

its discretion was an unreasonable application of clearly established Federal law." *Gilbert v.

Barnhart*, 2012 U.S. Dist. LEXIS 7422 at *21 (E.D. Mich. Jan. 23, 2012) (*citing Renico v. Lett*,

130 S. Ct. 1855, 1862, 176 L. Ed. 2d 678 (2010)).

> When reviewing the trial decision of a federal district court, the standard of
> review for a decision not to grant a mistrial is abuse of discretion.  *United States
> v. Chambers*, 944 F.2d 1253, 1263 (6th Cir. 1991). **When conducting habeas
> review of a trial decision of a state court not touching on a specific
> provision of the Bill of Rights, the standard of review is even higher: reversal is not
> warranted unless the comment "was potentially so misleading and**

_____

[5]  The Court addresses ground two first, as Rojas's arguments surrounding the trial
court's failure to grant a mistrial are also rehashed in some of his later grounds for relief.

> **prejudicial that it deprived [the defendant] of a constitutionally fair trial."**
> *Donnelly v. DeChristoforo*, 416 U.S. 637, 641-42, 40 L. Ed. 2d 431, 94 S. Ct.
> 1868 (1974) (noting that "not every trial error or infirmity which might call for
> application of supervisory powers correspondingly constitutes a 'failure to
> observe that fundamental fairness essential to the very concept of justice'").

*Zuern v. Tate*, 336 F.3d 478, 485 (6th Cir. 2003) (emphasis added); *accord Johnson v. Mitchell*,

585 F.3d 923 (6th Cir. 2009); *Oliver v. Parker*, 2012 U.S. Dist. LEXIS 186537 at *44 (E.D. Ky.

Aug. 9, 2012) ("In the habeas context, a federal court will overturn a State trial court's decision

not to grant a mistrial only if a witness's testimony 'was potentially so misleading and

prejudicial that it deprived [the defendant] of a constitutionally fair trial.'")  In making a

determination whether testimony or statements deprived a petitioner of a fundamentally fair trial,

a court considers five factors: whether the remark which occasioned the motion for a mistrial

was unsolicited; whether the line of questioning which led to the remark was reasonable;

whether a prompt and clear limiting instruction was given; whether there was any evidence of

governmental bad faith; and, how the remark compared to the balance of the evidence at trial.

*See Arthurs v. Warden, Warren Corr. Inst.*, 2012 U.S. Dist. LEXIS 39779 (S.D. Ohio Mar. 23,

2012) (*citing Zuern*, 336 F.3d at 485).

The state appellate court addressed this argument as follows:

> [*P36]  In his second assignment of error, appellant asserts that the trial court erred
> when it denied his motion for a mistrial.  In support, appellant argues that the
> attempt to elicit testimony from Moya concerning the attempted murder of a police
> officer during the ATM robbery prejudiced appellant so that a fair trial was
> impossible.

> [*P37]  On appeal, the trial court's decision to grant or deny a motion for a
> mistrial will not be overturned absent an abuse of discretion.  *State v. Goerndt*, 8th
> Dist. No. 88892, 2007 Ohio 4067, ¶20.  An abuse of discretion connotes more
> than a mere error of law or judgment, instead requiring a finding that the trial
> court's decision was unreasonable, arbitrary, or unconscionable.  *Blakemore v.
> Blakemore*, 5 Ohio St. 3d 217, 219, 5 Ohio B. 481, 450 N.E.2d 1140 (1983).

-23-

Generally, the granting of a mistrial is proper only in cases where a fair trial has become impossible. *Goerndt*, 2007 Ohio 4067, ¶ 21. "[T]he essential inquiry on a motion for mistrial is whether the substantial rights of the accused are adversely or materially affected." *Id.*

[*P38] As set forth above, the trial court issued a limiting instruction to the jury as to the use of Moya's testimony. In such cases, the jury is presumed to have understood and correctly followed the trial court's instruction.[6] *Id.* at ¶ 24.

[*P39] On consideration, we find that the trial court did not abuse its discretion when it denied appellant's motion for a mistrial. Appellant's second assignment of error is not well-taken.

*Rojas*, 2013-Ohio-1835.

As best as this Court can discern, Rojas's argument is that the trial court should have granted a mistrial after Raul Moya was allowed to testify with respect to another crime, not part of the trial, but in which Rojas was implicated. Rojas appears to take issue with the trial court allowing the prosecution to elicit testimony that Moya and Rojas, along with a few others, were involved in a robbery of an ATM on July 18, 2010, that resulted in several criminal charges, including the attempted murder of a Toledo police officer. (Tr. 718-722.) Immediately after this testimony, the trial court gave a limiting instruction:

All right. We're going to give a *limine* instruction now based upon the testimony that is being elicited in this case. We note that you have heard some testimony concerning other acts or crimes other than those which are charged in the indictment for which these individual defendants in their individual capacity are now being tried, and for your consideration of whether the state can prove beyond a reasonable doubt each and every material element of the offense and attached specification. As to other acts, that evidence is received for only a limited purpose, it is not received and you may not consider it to prove the character of

---

[6] Earlier in its decision, the state appellate court noted that "the record shows that the trial court, on its own initiative, questioned the relevance of Moya's testimony regarding the details of the ATM robbery and instructed the jury that it was to be considered only as to the issue of Moya's credibility. Under these circumstances, we cannot say that the trial court either abused its discretion ...." *Rojas*, 2013-Ohio-1835 at ¶35.

-24-

the individual defendants in order to show that they acted in conformity or in accordance with that character relative to the allegations contained in the seven counts of the indictment for which each stands.  You can only use it for purposes of testing the credibility of this witness and for no other purpose.[7]

(Tr. 724-25.)

Given the prompt and clear limiting instruction that was given by the trial court immediately after the objectionable testimony was elicited, this Court cannot find that the state appellate court unreasonably applied clearly established federal law by finding Rojas was not deprived of a fundamentally fair trial.

**B.    Ground One: Motion to Sever**

In his first ground for relief, Rojas argues that the trial court's denial of his motion to sever his trial from that of his co-defendant, Edgar Ramirez, denied him a fair trial and violated due process.  (ECF No. 1.)  In his brief before the state appellate court, Rojas argued that the denial was improper based on both state and federal law.  (ECF No. 11-19 at 16-22.)  The state appellate court, in its opinion, primarily addressed the severance issue in its state law parameters. *Rojas*, 2013-Ohio-1835 at ¶31-35.

"A petitioner seeking habeas relief on the basis of a trial court's failure to sever his trial from his co-defendant's bears a very heavy burden." *Stanford v. Parker*, 266 F.3d 442, 459 (6th Cir. 2001) (*citing United States v. Horton*, 847 F.2d 313, 316 (6th Cir. 1988)).  "As a general rule, joint trials are favored." *Id.* (*citing United States v. Dempsey*, 733 F.2d 392, 398 (6th Cir. 1984)).  Furthermore, the *Stanford* court observed that "[j]urors are presumed to follow the instructions of the court and to give each defendant's case separate consideration." *Id.* (*citing*

---

[7]  Rojas's counsel objected to this line of questioning, but the trial court allowed it after finding the door had been opened.  (Tr. 719-21.)

*Francis v. Franklin*, 471 U.S. 307, 324 n.9 (1985)).  It is also "well settled that defendants are

not entitled to severance merely because they may have a better chance of acquittal in separate

trials."  *Zafiro v. United States*, 506 U.S. 534, 540 (1993) (citations omitted).  Respondent

further contends there is no general constitutional right to a severance, and relies on a recent

decision of the United States District for Eastern Michigan.  (ECF No. 9 at 36-37.)

> As a general matter, there is no constitutional right to severance.  In *Zafiro v. United States*, 506 U.S. 534, 113 S. Ct. 933, 122 L. Ed. 2d 317 (1993), the Court considered "whether Rule 14 [of the Federal Rules of Criminal Procedure] requires severance as a matter of law when codefendants present 'mutually antagonistic defenses.'"  *Zafiro*, 506 U.S. at 535.  Thus, *Zafiro* did not establish any rule of constitutional law, and is inapplicable to petitioner's state court conviction.  *Cf. Williams v. Singletary*, 114 F.3d 177, 181 (11th Cir. 1997) (noting that *Zafiro* involved an interpretation of the Federal Rules of Criminal Procedure and thus "it is not at all clear that *Zafiro* establishes a rule of constitutional law to be applied to state court judgments in § 2254 proceedings," but finding it unnecessary to resolve the question); *Henry v. Scully*, 918 F. Supp. 693, 714 n.7 (S.D.N.Y. 1995) ("Petitioner's counsel argues that Henry's trial counsel erred in failing to request a severance.  This argument, which depends upon Henry's having had a constitutional right to a severance, is without merit. Henry has shown no federal constitutional right to a severance.").

> Thus, habeas relief will be warranted for a trial court's failure to sever a petitioner's trial from that of his codefendants only where the denial itself deprives the petitioner of a fundamentally fair trial.  In other words, "a state trial court's refusal to grant severance mandates habeas corpus relief (1) when the joint trial 'resulted in the deprivation of a specific constitutional guarantee such as the right to call witnesses . . . or the right to confrontation,' or (2) when the joint trial abridged the defendant's 'fundamental right to a fair trial as secured by the Fourteenth Amendment.'"  *Turpin v. Kassulke*, 26 F.3d 1392, 1404 (6th Cir. 1992) (Feikens, D.J., concurring in part and dissenting in part) (quoting *Jenkins v. Bordenkircher*, 611 F.2d 162, 168 (6th Cir. 1979)); *accord Hutchison v. Bell*, 303 F.3d 720, 731 (6th Cir. 2002). Where the denial of a specific constitutional right is not involved, a failure to sever results in a denial of a fair trial only if there "is a serious risk that a joint trial would . . . prevent the jury from making a reliable judgment about guilt or innocence."  *Zafiro*, 506 U.S. at 539. Under this prong of the test, severance is generally mandated only in three situations: (1) where there is compelling evidence admitted against a codefendant which would not otherwise be admissible against the defendant; (2) where the sheer number of defendants and charges makes it impossible for the jury to separate the issues

-26-

involved; and (3) where the defendant's involvement in the crime is significantly different in scope or magnitude from that of his codefendants.  *See United States v. Blankenship*, 382 F.3d 1110, 1123-25 (11th Cir. 2004).  However, joint trials are favored, and the potential for prejudice alone is insufficient to mandate severance.  *See Stanford v. Parker*, 266 F.3d 442, 459 (6th Cir. 2001).

*Cardenas-Borbon v. Burt*, 2013 U.S. Dist. LEXIS 185524, 36-39 (E.D. Mich. Dec. 23, 2013), *adopted by* 2014 U.S. Dist. LEXIS 24854 ( E.D. Mich. Feb. 27, 2014).

In *Clark v. O'Dea*, 257 F.3d 498, 503-504 (6th Cir. 2001), the Sixth Circuit Court of Appeals noted that in order to mount a successful habeas challenge, a petitioner "must show both (1) an abuse of discretion on the part of the trial court and (2) compelling and specific prejudice in order to successfully challenge the joinder of his trial with that of a codefendant."  *Id*. (*citing Jenkins v. Bordenkircher*, 611 F.2d 162, 168 (6th Cir. 1979)).  The *Clark* court further observed that "compelling and specific prejudice" is not shown where a codefendant's testimony did not expressly implicate the defendant.  *Id*. (*citing U.S. v. Sherlin*, 67 F.3d 1208, 1215 (6th Cir. 1995)); *see also Stanford*, 266 F.3d at 442 ("[g]ranting or denying severance is within the trial judge's discretion ... [a]nd, a state trial court's alleged abuse of discretion, without more, is not a constitutional violation.") (citations omitted).

Here, the co-defendant, Ramirez, did not testify.  The state appellate court found that the trial court neither abused its discretion nor was there any prejudice to Rojas.  *Rojas*, 2013-Ohio-1835 at ¶35.  This Court cannot find this determination unreasonable, as no compelling and specific prejudice to Rojas has been demonstrated.  Rojas and co-defendant Ramirez did not present mutually antagonistic defenses, as noted by the state court when it observed that "[R]ojas and Ramirez participated in the same or similar acts that constituted the charged offenses, and that were part of the same course of criminal conduct."  *Rojas*, 2013-Ohio-1835 at ¶35.  Some of

the most damaging testimony against Rojas and Ramirez came from a co-conspirator, Moya, who was not a co-defendant.  Furthermore, Ramirez's counsel's attempts to discredit the testimony of Moya cannot reasonably be construed as depriving Rojas of a fair trial, as any doubts raised concerning Moya's credibility would have been mutually beneficial to Rojas and Ramirez.  Because Rojas has failed to establish compelling and specific prejudice, his first ground for relief is without merit.

**C.  Ground Three: Denial of Request for New Counsel**

In his third ground for relief, Rojas asserts that he was denied his right to counsel when the trial court denied his motion for a new attorney on the day trial commenced.  (ECF No. 1.)  The state appellate court addressed this issue as follows:

> {¶ 40} In his third assignment of error, appellant asserts that the trial court erred when it did not dismiss his appointed attorney and provide him with new counsel on the first day of trial.  In support, appellant argued that his relationship with appointed counsel was broken down to the point that it jeopardized his right to effective assistance of counsel.

> {¶ 41} It is well-settled that the right to competent appointed counsel does not "require that a criminal defendant develop and share a 'meaningful relationship' with his attorney."  *State v. Swogger*, 5th Dist. No.2011–CA–007, 2011–Ohio–5607, ¶ 12, *citing Morris v. Slappy*, 461 U.S. 1, 13, 103 S.Ct. 1610, 75 L.Ed.2d 610 (1983).  In that regard, a showing of hostility, tension, or even personal conflict between an attorney and his client are not sufficient to justify a change in appointed counsel, unless there is a showing that such conflict interferes with the preparation or presentation of a competent defense.  *Id*. at ¶ 14.  A mere disagreement between attorney and client as to trial tactics is not sufficient to justify a change in appointed counsel. *Id*., *citing State v. Glasure*, 132 Ohio St.3d 227, 239, 724 N.E.2d 1165 (1999).

> {¶ 42} The record shows that, prior to trial, appellant asked the trial court to replace his appointed counsel because she "no longer has my best interest in mind." Specifically, appellant stated that he was not ready to go to trial because counsel did not give him all of the discovery in the case, and she did not sufficiently confer with him regarding his defense. Counsel responded that she visited appellant in prison at least 12 times, and that she gave him the discovery

-28-

that was in her possession prior to trial. At the conclusion of the exchange, the trial court denied appellant's request for new appointed counsel.

{¶ 43} On consideration, we find that the record does not demonstrate a conflict between appellant and his appointed counsel that is sufficient to interfere with the preparation of a competent defense, or that would otherwise prejudice appellant and keep him from having a fair trial. Accordingly, the trial court did not abuse its discretion by denying appellant's request for new counsel. Appellant's third assignment of error is not well-taken.

*Rojas*, 2013-Ohio-1835.

The record reflects that Rojas first raised his request for new counsel on the date trial was to begin; that the trial court held an extensive discussion with Rojas and counsel on-the-record regarding his request; and, that counsel contradicted Rojas's assertion that he had not received complete discovery. (Tr. 4-11.) Counsel also indicated that she had visited Rojas in connection with his case on at least twelve occasions. *Id*. The on-the-record discussion also revealed that the attorney had been initially retained by Rojas's family with respect to a related case, which was dismissed. The same counsel was appointed by the court to represent Rojas in the underlying action. It was also established that Rojas had no financial means to retain counsel. The Sixth Circuit Court of Appeals has explained as follows:

The Sixth Amendment guarantees that "in all criminal prosecutions, the accused shall enjoy the right ... to have the assistance of Counsel for his defense." U.S. Const. amend. VI. In *Powell v. Alabama*, the Supreme Court recognized that "a defendant should be afforded a fair opportunity to secure counsel of his own choice." 287 U.S. 45, 53, 53 S.Ct. 55, 77 L.Ed. 158 (1932). The Sixth Amendment also guarantees "a defendant the right to be represented by an otherwise qualified attorney whom that defendant can afford to hire, or who is willing to represent the defendant even though he is without funds." *Caplin & Drysdale, Chartered v. United States*, 491 U.S. 617, 624–625, 109 S.Ct. 2646, 105 L.Ed.2d 528 (1989). However, "the right to choose one's own counsel is circumscribed in several important respects." *Wheat v. United States*, 486 U.S. 153, 159, 108 S.Ct. 1692, 100 L.Ed.2d 140 (1988). The Supreme Court has held that "while the right to select and be represented by one's preferred attorney is comprehended by the Sixth Amendment, the essential aim of the Amendment is

-29-

to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers." *Id*.

In order for Brooks to prevail, he must demonstrate that the state court decision was contrary to clearly established law as determined by the Supreme Court of the United States. 28 U.S.C. § 2254(d)(1).  For the purposes of AEDPA, however, the clearly established law does not indicate that the trial court had a duty to conduct a good cause inquiry before determining whether to grant or deny Brooks's request for new counsel.  Indeed, the Supreme Court has held that the Sixth Amendment "guarantees defendants in criminal cases the right to adequate representation, but those who do not have the means to hire their own lawyers have no cognizable complaint so long as they are adequately represented by attorneys appointed by the courts." *Caplin & Drysdale*, 491 U.S. at 624, 109 S.Ct. 2646.  Brooks, therefore, had a right to be represented by the counsel of his choice only if he could afford to hire that counsel, or if that counsel was willing to represent him regardless of his inability to pay....  To the extent that Brooks would invoke *Caplin* because his representation was inadequate, we are unpersuaded. Nothing before us suggests that Brooks's counsel did not represent him "adequately." *Id*.  Brooks sought a new attorney because he did not receive discovery materials in a manner he found timely and because his attorney did not meet with him as often as he would have liked.  These allegations do not implicate the Supreme Court's instruction that those with no means to hire counsel do, indeed, have just cause for constitutional complaint if their representation is subpar and they suffer prejudice as a result. *See Evitts v. Lucey*, 469 U.S. 387, 395–96, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985).

*Benitez v. Lafler*, 454 Fed. App'x 449, 451-52 (6th Cir. 2012)

Given the above, the trial court had no duty to conduct a good cause inquiry before determining whether to grant or deny Rojas's request for new counsel.  The court, nonetheless, did so.  As stated in *Benitez*, merely because Rojas believed that trial counsel did not provide discovery in a satisfactory manner or did not meet with him as often as he wished did not render her representation inadequate.  Moreover, as discussed below, there is no merit to Rojas's claim that trial counsel was ineffective.  As such, the state appellate court's decision did not unreasonably apply clearly established federal law in finding no error stemming from the denial of the motion for new counsel.

**D.    Ground Four: Ineffective Assistance of Trial Counsel**

In his fourth ground for relief, Rojas argues that trial counsel was ineffective.  To establish ineffective assistance of counsel, a petitioner must demonstrate that his counsel's conduct was so below acceptable standards of representation that counsel was not functioning as "counsel" guaranteed by the Sixth Amendment to the United States Constitution.  *See Strickland v. Washington*, 466 U.S. 668 (1984); *United States v. Bavers*, 787 F.2d 1022 (6th Cir. 1985).  A petitioner also must demonstrate that a trial counsel's performance prejudiced the petitioner's defense to such an extent that it rendered the proceeding unfair.  *Id.*  To establish prejudice, the "defendant must show that there is a reasonable probability that, but for counsels unprofessional errors, the result of the proceeding would have been different."  *Id.* at 694.  In other words, a counsel's deficient performance must have "caused the defendant to lose what he otherwise would probably have won" and it must have been "so manifestly ineffective that defeat was snatched from the hands of probable victory."  *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992).

"[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."  *Strickland*, 466 U.S. at 690.  Mere disagreements by a defendant with tactics or strategies employed by counsel are not enough to support a claim of ineffective assistance of counsel and there is a presumption that the challenged conduct of a petitioner's counsel was a matter of strategy.  *Id.* at 689; *see also United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990).

As explained recently by the United States Supreme Court:

> Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult.  The standards created by *Strickland* and §

-31-

2254(d) are both "highly deferential," *id.*, at 689, 104 S. Ct. 2052, 80 L. Ed. 2d 674; *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7, 117 S. Ct. 2059, 138 L. Ed. 2d 481 (1997), and when the two apply in tandem, review is "doubly" so, *Knowles*, 556 U.S., at ___, 129 S. Ct. 1411, 173 L. Ed. 2d 251.  The *Strickland* standard is a general one, so the range of reasonable applications is substantial. 556 U.S., at ___, 129 S. Ct. 1411, 173 L. Ed. 2d 251. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland* 's deferential standard.

*Harrington v. Richter,* 131 S. Ct. 770, 788 (U.S. 2011); *accord Kennedy v. Warren*, 2011 WL 1642194, *2 (6th Cir. May 3, 2011); *accord Goza v. Welch*, 2012 U.S. Dist. LEXIS 178665 at **24-25 (N.D. Ohio Dec. 18, 2012).

The state appellate court addressed Rojas's arguments as follows:

[*P46]  Based on our determinations as to appellant's first and third assignments of error, we find no evidence to support appellant's claim that counsel's performance was inadequate as to the motion to sever or communication with appellant before trial.  As to appellant's claim regarding counsel's failure to challenge the prosecutor during voir dire, appellant does not claim that counsel's failure to object was anything other than trial strategy.  *See State v. Perez*, 124 Ohio St.3d 122, 2009 Ohio 6179, 920 N.E.2d 104, ¶ 206, citing *Miller v. Francis*, 269 F.3d 609, 615 (6th Cir.2001).  In the context of a claim of ineffective assistance of counsel, "[counsel's actions during *voir dire* are presumed to be matters of trial strategy.")

[*P47]  As to appellant's claim that counsel failed to adequately consult with him regarding the plea offer, the record shows that the state offered to dismiss all but one charge against appellant in exchange for a guilty plea.  When appellant's attorney indicated she had not adequately discussed the latest version of the state's offer with appellant, the trial court gave counsel and appellant time to consult.  Thereafter, the court inquired of appellant as to whether he wanted to accept the plea. Part of that discussion was an explanation that, if convicted on all counts, appellant could be 101 years old when he was released from prison. After that discussion, appellant stated: "[I want to] go forward with trial. But I would like to address the court that I would like to go to trial on all counts for interest in justice."  Under such circumstances, we cannot say that counsel's performance was prejudicial or ineffective in regard to the plea offer.

[*P48]  As to counsel's failure to renew the Crim.R. 29 motion at the end of the

-32-

trial, we note that:

> [t]he standard of review for a Crim.R. 29(A) motion is generally the same as a challenge to the sufficiency of the evidence. *State v. Hollis*, 4th Dist. No. 09CA9, 2010 Ohio 3945, 2010 WL 3294327, ¶ 19. *See State v. Hairston*, 4th Dist. No. 06CA3081, 2007 Ohio 3880, 2007 WL 2181535, at ¶ 16; *State v. Brooker*, 170 Ohio App.3d 570, 2007 Ohio 588, 868 N.E.2d 683, at ¶ 8. Appellate courts must determine whether the evidence adduced at trial, if believed, supports a finding of guilt beyond a reasonable doubt. *See State v. Thompkins*, 78 Ohio St.3d 380, 386, 1997 Ohio 52, 678 N.E.2d 541 (1997); *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991). *State v. Grube*, 4th Dist. No. 12CA7, 2013 Ohio 692,¶ 67, 987 N.E.2d 287.

[*P49]  For the reasons set forth in our determination of appellant's fifth assignment of error, the failure to renew the Crim.R. 29 motion was not erroneous.  Appellant's argument that counsel was ineffective on that basis is without merit.

[*P50]  As to appellant's argument that counsel generally put on an inadequate defense, appellant has demonstrated nothing to rebut the presumption that trial counsel's performance was adequate, or that her failure to "jump through all the hoops," as defined by appellant, would have produced another result.

 [*P51]  For the foregoing reasons, appellant's fourth assignment of error is not well-taken.

*Rojas*, 2013-Ohio-1835.

In his petition and memorandum in support, Rojas makes vague allegations that counsel failed to file a motion to suppress a witness's testimony; alleged there was an irreconcilable conflict between himself and counsel; that counsel failed to investigate the matter prior to trial; and, that counsel failed to object to prosecutorial misconduct.  (ECF Nos. 1 & 15.)  Rojas's allegations that he had an irreconcilable conflict with counsel, who failed to investigate the matter prior to trial, are redundant of his third ground for relief, which the Court has already determined to be without merit.  Rojas also failed to identify any alleged instance of prosecutorial misconduct to which counsel should have objected.  (ECF Nos. 1 & 15.)  To the

-33-

extent Rojas believes counsel should have objected to the line of questioning regarding an unrelated attempted murder of a police officer, counsel did in fact object when Rojas became implicated on redirect but was overruled by the court. (Tr. 719-720.)  It is also unclear which witness's testimony Rojas believes should have been the subject of a motion to suppress or what the legal basis of the motion should have been.  While Rojas plainly believes Moya's testimony was false, he offers no evidentiary support and there appears to be no legally apparent justification for suppressing Moya's testimony.  As such, Rojas's fourth ground for relief is without merit.[8]

**E.      Ground Five: Manifest Weight of the Evidence**

In ground five, Rojas asserts that the verdicts of the jury "were against the manifest weight of the evidence."  (ECF No. 1 at 12.)  A claim that a conviction is against the manifest weight of the evidence is a state-law claim that is not cognizable upon federal habeas review.  *See Nash v. Eberlin*, 258 Fed. Appx. 761, 765, n. 4 (6th Cir.2007); *Hess v. Eberlin*, 2006 WL 2090093 (S.D. Ohio 2006) (*citing Walker v. Engle*, 703 F.2d 959, 969 (6th Cir.1983)).  Although Rojas asserts

---

[8] "The pleadings of *pro se* prisoners are liberally construed and held to a less stringent standard than those prepared by attorneys [and] [a]s a general rule, *pro se* pleadings are liberally construed when determining whether they state a viable claim upon which relief can be granted." *United States v. Kirkpatrick*, 2009 U.S. Dist. LEXIS 77248 (E.D. Tenn. Aug. 28, 2009) (citing *McNeil v. United States*, 508 U.S. 106, 113, 113 S. Ct. 1980, 124 L. Ed. 2d 21 (1993); *Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S. Ct. 594, 30 L. Ed. 2d 652 (1972); *Martin v. Overton*, 391 F.3d 710, 712 (6th Cir. 2004); *Jourdan v. Jabe*, 951 F.2d 108, 110 (6th Cir. 1991)).  Nonetheless, "[t]he Court is not required to assume or conjure up allegations and claims on behalf of a *pro se* litigant which he fails to plead." *Id.* (citing *Martin*, 391 F.3d at 714; *Erwin v. Edwards*, 22 Fed. App'x. 579, 580 (6th Cir. 2001); *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989)).  Nowhere in his petition or response does Rojas allege that counsel was ineffective in failing to communicate a plea agreement or suggest that counsel was ineffective during *voir dire*.  Though these arguments were made in state court, the Court considers them abandoned here.

ground five as a "manifest weight" claim, in his memorandum in support he makes reference to the sufficiency of the evidence.  (ECF No. 15 at 7.)  Unlike "manifest weight claims," "insufficient evidence" claims are cognizable in habeas under the Fourteenth Amendment's Due Process Clause.  *In re Winship*, 397 U.S. 358, 363–64, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970).

Courts generally give "liberal and active construction of *pro se* claims for relief 'to encompass any allegation stating federal relief,' and district courts have construed "manifest weight" claims as "insufficient evidence" claims when circumstances so warrant.  *Nash v. Eberlin*, 258 Fed. App'x. at 765, n. 4 (citations omitted).  In light of Rojas's *pro se* status and the fact that he appears to conflate the two in his argument, the Court will construe ground five as raising a sufficiency rather than manifest weight claim.  Furthermore, exhaustion and default are not at issue, as the state appellate court construed Rojas's fifth assignment of error as challenging both the sufficiency as well as the manifest weight of the evidence.  *Rojas*, 2013-Ohio-1835 at ¶¶52-56.  In addition, "the determination by the Ohio Court of Appeals that the conviction was supported by the manifest weight of the evidence necessarily implies a finding that there was sufficient evidence."  *Nash*, 258 Fed. App'x at 765.

The Due Process clause of the Fourteenth Amendment requires that a criminal conviction be supported by proof beyond a reasonable doubt with respect to every fact necessary to constitute the offense charged*.  In re Winship*, 397 U.S. 358, 363–64, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970).  The standard for determining if a conviction is supported by sufficient evidence is "whether after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *Jackson v. Virginia*, 443 U.S. 307, 317, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).  In making such a

-35-

determination, a district court may not substitute its own determination of guilt or innocence for that of the factfinder, nor may it weigh the credibility of witnesses.  *See id.*; *Walker v. Engle*, 703 F.2d 959, 970 (6ᵗʰ Cir.1983).  Moreover, federal courts are required to give deference to factual determinations made in state court and "[a]ny conflicting inferences arising from the record ... should be resolved in favor of the prosecution." *Heinish v. Tate*, 9 F.3d 1548, 1993 WL 460782 (6ᵗʰ Cir.1993) (unpublished opinion), *citing Walker*, 703 F.3d at 969–70; *Wright v. West*, 505 U.S. 277, 296, 112 S.Ct. 2482, 120 L.Ed.2d 225 (1992) (the deference owed to the trier of fact limits the nature of constitutional sufficiency review.)

Rojas was convicted for five counts of complicity to commit aggravated robbery and two counts of complicity to commit felonious assault – all seven with firearm specifications.  Rojas does not argue that there was insufficient evidence to convict him of all elements of the crimes for which he was convicted.  Rather, the crux of Rojas's argument is that his convictions could not stand without the testimony of Moya, and that testimony he believes was false and amounted to perjury.  (ECF No. 1 at 12.)  The state appellate court addressed this argument as follows:

> [*P53]  The term "sufficiency" of the evidence presents a question of law as to whether the evidence is legally adequate to support a jury verdict as to all elements of the crime.  *State v. Thompkins*, 78 Ohio St.3d 380, 386, 1997 Ohio 52, 678 N.E.2d 541 (1997).  The relevant inquiry in such cases is "whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."  *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

> \* \* \*

> [*P55]  After reviewing the trial court's record, we find sufficient evidence was presented to demonstrate that deadly weapons were used in the Marathon, Circle K, KeyBank and Sunoco robberies.  As to Moya being the only witness to identify appellant as one of the robbers, Ohio courts have repeatedly recognized that the jury is in the best position to judge the credibility of witnesses because it

"is best able to view witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *State v. Cook*, 9th Dist. No. 21185, 2003 Ohio 727, ¶ 30, *quoting Giurbino v. Giurbino*, 89 Ohio App.3d 646, 659, 626 N.E.2d 1017 (8th ist. 1993).

[*P56]  On consideration, we find that the record contains sufficient evidence to support appellant's convictions for complicity to commit aggravated robbery and complicity to commit felonious assault....  Appellant's fifth assignment of error is not well-taken.

*Rojas*, 2013-Ohio-1835.

Witness Raul Moya testified at trial that he, Rojas, and Ramirez – along with a number of other individuals – were all members of a gang called "Surenos 13."  (ECF No. 11-12, Exh. 12, Tr. 655-56.)  He identified Rojas in court.  (Tr. 657.)  Moya testified that he was also initially charged with some or all of the offenses for which Rojas and Ramirez were on trial, but the charges were dismissed against him in exchange for his testimony.  *Id*.  He also testified to the following.  Along with Rojas, Ramirez, and a number of other individuals, they robbed a Marathon gas station on Alexis Road in June of 2010.  (Tr. 657-662.)  Rojas and Ramirez were armed with a shotgun during the robbery, Rojas discharged his in the store.  (Tr. 659-660, 663.)  He, Rojas, Ramirez, and a few others also robbed a Circle K approximately two weeks later.  (Tr. 666.)  Again, Rojas and Ramirez were armed with shotguns.  (Tr. 667, 670.)  Rojas pointed the shotgun at the clerk and told her to open the register.  (Tr. 670.)  They decided to rob a Key Bank branch.  (Tr. 675.)  Ramirez and Rojas again had the shotguns.  *Id*.  Ramirez fired a shot at the ceiling upon entering the bank.  (Tr. 677-78.)  After seeing a bank employee come out from a door just to retreat back behind and lock it, Rojas fired a shot at the door.  *Id*.  In July of 2010, he, Rojas, and two others robbed a Sunoco station.  (Tr. 679-681.)  Rojas had a .32 caliber handgun during the Sunoco robbery, but did not discharge it.  (Tr. 680-81, 684.)

-37-

The basis of the fifth complicity to aggravated robbery conviction (Count Three as amended before trial), was the robbery of Tammy Davis, a customer at the Circle K when it was robbed.  (Tr. 1110-1112, 1175.)  Ms. Davis testified that she was at the Circle K on the morning of June 27, 2010 when five men with masks and shotguns entered the premises.  (Tr. 528.)  One of the men approached her with a shotgun, put the gun to her shoulder, told her to sit down, and demanded her money.  (Tr. 528-31.)  She turned it over to him.  *Id*.

In addition, the basis of the first complicity to commit felonious assault conviction (Count Five as amended before trial) was the assault of Heidi Birkenkamp, an employee of Key Bank.  (Tr. 1121-1126, 1176.)  Ms. Birkencamp testified that on July 7, 2010, she was working as a bank teller when five men wearing masks entered the bank.  (Tr. 537-38.)  Two or three men had "long" guns.  (Tr. 539-40.)  One of the men, wearing a Carhartt jacket fired a shot right above her head and into the ceiling.  (Tr. 540.)  The same man in the Carhartt jacket fired a shot at the back door after it opened.  (Tr. 543-44.)  Another bank employee, Carmen Whityam, testified that she was also working at the time of the robbery and was in a back room of the bank when she heard the first gunshot.  (Tr. 555-558.)  She testified that the bank manager, Scott Flaherty opened the back door and she saw five masked men, one with a gun.  (Tr. 558-60.)  As Mr. Flaherty closed the door, the second shot was fired and the blast hit the door.[9]  (Tr. 559-61.)

     Viewing this testimony in the light most favorable to the prosecution, any rational trier of fact could have found Rojas guilty of five counts of complicity to commit aggravated robbery and two counts of complicity to commit felonious assault – all seven with firearm specifications.

---

[9]  This second shot in the direction of Mr. Flaherty formed the basis of the complicity to commit attempted murder, but Rojas was convicted only of the lesser included offense of complicity to commit felonious assault.

-38-

The issue of whether the witnesses, including Moya, were truthful in their testimony is beyond this Court's review.  The jury was made aware of Moya's involvement in the robberies, his immunity from prosecution in exchange for his testimony, and any inconsistent statements made previously.  A habeas court may not substitute its own determination of guilt or innocence for that of the jury, nor weigh the credibility of the witnesses.  As such, Rojas's fifth ground for relief is without merit.

**F.    Ground Six: Cumulative Error**

Rojas argues in his sixth ground for relief that the cumulative effect of the errors deprived him of a fair trial.  "[T]he law of this Circuit is that cumulative error claims are not cognizable on habeas [review] because the Supreme Court has not spoken on this issue."  *Cross v. Stovall*, 238 Fed. App'x. 32, 41 (6th Cir. 2007), cert. denied 552 U.S. 981, 128 S. Ct. 454, 169 L. Ed. 2d 317 (2007) (*quoting Williams v. Anderson*, 460 F.3d 789, 816 (6th Cir. 2006)); *accord Hoffner v. Bradshaw*, 622 F.3d 487, 513 (6th Cir. Ohio 2010) ("we have previously held that 'post-AEDPA, not even constitutional errors that would not individually support habeas relief can be cumulated to support habeas relief.'") (*quoting Moore v. Parker*, 425 F.3d 250, 256 (6th Cir. 2005); *Gillard v. Mitchell*, 445 F.3d 883, 898 (6th Cir. 2006) ("[B]ecause [petitioner's] individual assignments of error would not support habeas relief, ... the cumulative effect thereof is likewise insufficient."); *Morris v. Bell*, 2011 U.S. Dist. LEXIS 155039 at *196 (W.D. Tenn. Sept. 29, 2011). Therefore, as none of the claims previously discussed warrant habeas relief on their own, they are not cognizable under a cumulative error review and provide no basis for relief.[10]

---

[10]  While the Court recognizes that the cumulative errors of counsel could result in a valid claim of ineffective assistance of counsel, the Court has considered such a claim and already determined that counsel was not ineffective. *See, e.g., Getsy v. Mitchell*, 495

**G. Ground Seven: Merger of Sentences**

In his seventh ground for relief, Rojas argues that his convictions on counts two and three should have merged pursuant to O.R.C. § 2941.25, as both aggravated robberies occurred at Circle K and were the "result of a singleness of thought, purpose, or action ... a single state of mind." (ECF No. 1.) He asserts that his convictions violate the Double Jeopardy clause of the United States Constitution. (ECF No. 1 at 9.) Before the state appellate court, Rojas argued only that the two convictions should have merged pursuant to state law. (ECF No. 11-19 at 36.) He did not argue double jeopardy. *Id.*

The Sixth Circuit Court of Appeals has recently explained the interplay in habeas actions between the federal constitutional prohibitions against double jeopardy and state law:

> The Double Jeopardy Clause of the Fifth Amendment of the United States Constitution provides, "No person . . . shall . . . be subject for the same offence to be twice put in jeopardy of life or limb ... ." U.S. CONST. amend. V. This clause is applicable to the states through the Due Process Clause of the Fourteenth Amendment. *Benton v. Maryland*, 395 U.S. 784, 794, 89 S. Ct. 2056, 23 L. Ed. 2d 707 (1969). The Due Process Clause affords a criminal defendant three basic protections: (1) protection from a second prosecution of the same offense following acquittal; (2) protection from a second prosecution of the same offense following conviction; and (3) protection from multiple punishments for the same offense. *Brown v. Ohio*, 432 U.S. 161, 165, 97 S. Ct. 2221, 53 L. Ed. 2d 187 (1977) (quoting *North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S. Ct. 2072, 23 L. Ed. 2d 656 (1969), overruled in part on other grounds by *Alabama v. Smith*, 490 U.S. 794, 109 S. Ct. 2201, 104 L. Ed. 2d 865 (1989)).
>
> This case concerns the third protection. However, our review of this claim is limited. "With respect to cumulative sentences imposed in a single trial, the Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended." *Missouri v. Hunter*, 459 U.S. 359, 366, 103 S. Ct. 673, 74 L. Ed. 2d 535 (1983). In *Blockburger v. United States*, 284 U.S. 299, 52 S. Ct. 180, 76 L. Ed. 306 (1932),

_____

F.3d 295, 317 (6th Cir. 2007) ("[Petitioner's] cumulative-error claim therefore fails because there are simply no errors to cumulate.")

the Supreme Court developed the "same elements" test to determine whether Congress authorized multiple punishments.  It stated, "the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not."  *Id*. at 304.  "The *Blockburger* test, however, is a rule of statutory construction, not a constitutional test in and of itself."  *Volpe v. Trim*, 708 F.3d 688, 696 (6th Cir. 2013) (internal citations and quotation marks omitted).

"When assessing the intent of a state legislature, a federal court is bound by a state court's construction of that state's own statutes."  *Banner v. Davis*, 886 F.2d 777, 780 (6th Cir. 1989).  "Thus, for purposes of double jeopardy analysis, once a state court has determined that the state legislature intended cumulative punishments, a federal habeas court must defer to that determination." *Id*.; *see also Dodge v. Robinson*, 625 F.3d 1014 (8th Cir. 2010) (denying a petition for habeas corpus based on a double-jeopardy multiple-punishment claim where the state court held, after applying *Blockburger*, that the two crimes were not the same offense and the legislature therefore intended cumulative punishment); *McCloud v. Deppisch*, 409 F.3d 869, 871 (7th Cir. 2005) (same); *Birr v. Shillinger*, 894 F.2d 1160 (10th Cir. 1990) (same).

*Galvan v. Prelesnik*, 2014 U.S. App. LEXIS 19240 at \*\*5-7 (6th Cir. Oct. 3, 2014).

In the petition at bar, Rojas's argument implicates the third protection afforded by the Double Jeopardy clause, namely protection from multiple punishments for the same offense. The state appellate court, addressing Rojas's argument solely on state grounds, found as follows:

[\*P58]  In his seventh assignment of error, appellant asserts that his two aggravated robbery convictions that resulted from the Circle K robbery (Counts 2 and 3), and the two nine-year sentences that resulted, should have been merged into one sentence because they arose from the same transaction and were therefore allied offenses of similar import.  In support, appellant points out that the trial court merged the two firearm specifications for those counts. Appellant is mistaken, for the following reasons.

[\*P59]  R.C. 2941.25(A), Ohio's multiple-count statute, provides that, "[w]here the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one."  As set forth above, there were two victims of the Circle K robbery—the store clerk, Gloria Case, and her customer, Tammy Davis. Although appellant's offenses arose from a single course of conduct, i.e., the Circle K robbery, each offense involved a separate victim, Case and Davis.  Therefore, they were not allied offenses of

-41-

similar import, and the trial court did not err by imposing two nine-year prison terms. *See State v. Feller*, 1ˢᵗ Dist. Nos. C-110775, C-110776, 2012 Ohio 6016, ¶ 36, 985 N.E.2d 210.   The merger of the two firearm specifications pursuant to R.C. 2929.14(B)(1)(b) has no effect on whether or not the underlying offenses are allied offenses of similar import. *See State v. Marshall*, 8th Dist. No. 87334, 2006 Ohio 6271, ¶36 ("Although the crimes may be part of the same transaction and therefore the firearms specifications merge, it does not meant that the base charges are allied offenses of similar import."); and *State v. Jones*, 6ᵗʰ Dist. No. L-07-1292, 2009 Ohio 6973, ¶9, citing *State v. Gregory*, 90 Ohio App.3d 124, 129, 628 N.E.2d 86 (1993). ("[W]here a defendant commits the same offense against different victims during the same course of conduct, a separate animus exists for each offense.")

[*60] For the foregoing reasons, appellant's seventh assignment of error is not well-taken.

*Rojas*, 2013-Ohio-1835.

While it is Rojas's belief that the state appellate court's decision was incorrect as to the issue of allied offenses, this Court simply cannot overrule a state court's interpretation of state law.  *See, e.g., Vroman v. Brigano*, 346 F.3d 598, 604 (6ᵗʰ Cir. 2003) ("Federal courts are obligated to accept as valid a state court's interpretation of state law and rules of practice of that state."); *Volpe v. Trim*, 708 F.3d 688, 697 (6ᵗʰ Cir. 2013) ("[w]hen assessing the intent of a state legislature, a federal court is bound by a state court's construction of that state's own statutes.") (citations omitted).  Moreover, the decision is consistent with other Ohio appellate decisions. *See, e.g., State v. Howard*, 2003 WL 1389115, 2003-Ohio-1365 at ¶15 (Ohio Ct. App. Mar. 21, 2003) ("It is well-settled that when an offender robs different victims of different property in a short period of time, he can be convicted of each robbery because there is a separate animus for each offense, *i.e.*, a separate victim."); *State v. Smith*, 2011 WL 2476473, 2011-Ohio-3051 at ¶79 (Ohio Ct. App. Jun. 23, 2011) ("Because defendant's robbery convictions represent offenses he separately committed against multiple victims, they are not allied offenses of similar import.");

*State v. Rogers*, 994 N.E.2d 499, 2013-Ohio-3235 at ¶22 (Ohio Ct. App., Jul. 25, 2013) ("Separate victims alone established a separate animus for each offense.  Even if the defendant cannot distinguish one victim's goods from another's does not mean his conduct did not impact multiple victims.")

Simply put, had Rojas and his co-conspirators robbed only the Circle K and not Tammy Davis, a customer who happened to be in the store, there would only be one charge of robbery stemming from the events of June 27, 2010.  Instead, either Rojas or one of his co-conspirators held a shotgun to Ms. Davis's shoulder and demanded her money.  (Tr. 528-31.)  This act is separate and distinct from the robbery of the Circle K, as the money stolen from Ms. Davis was her property, taken directly from her, and not from Circle K.  Merely because Ms. Davis happened to be *inside* the Circle K does not mean Rojas and his co-conspirators were free to rob Ms. Davis with impunity or be exempt from additional punishment for that separate act.  Rojas's argument that the two separate robberies were the product of a single action is patently unreasonable, and he cites no law that would essentially allow criminal defendants to receive a free pass for crimes committed against a second, third, or even fourth victim so long as the nature of the crime was the same and largely contemporaneous with the first act.  Under Rojas's theory, a single act of arson resulting in the deaths of a dozen victims would constitute only one crime and the arsonist would essentially go unpunished for eleven of the twelve deaths.  *See, e.g., State v. Collins*, 2011-Ohio-3241 (Ohio Ct. App. Jun. 30, 2011) ("[W]hile the aggravated arson and felony murder counts merge, the separate counts as to each victim remain.  Although Collins set one fire, he created a substantial risk of harm or injury to four children.")  Thus, neither the Double Jeopardy clause nor Ohio law mandates merger under these circumstances.

-43-

Rojas's seventh ground for relief is entirely devoid of merit.

### F.  Grounds Eight, Nine and Eleven: Admissibility of Evidence and Ineffective Assistance of Appellate Counsel[11]

In ground eight, Rojas argues that the admission of the allegedly perjured testimony of Moya was improper under Ohio evidentiary rules.  (ECF No. 1.)  In ground nine, Rojas argues that the trial court again violated Ohio evidentiary rules by admitting allegedly irrelevant evidence.  *Id.*  In ground eleven, Rojas asserts that appellate counsel was ineffective largely for failing to raise the two arguments contained in grounds eight and nine.[12]  (ECF No. 1 at 13.)

The United States Supreme Court has repeatedly stated that "federal habeas corpus relief does not lie for errors of state law."  *Lewis v. Jeffers*, 497 U.S. 764, 780, 110 S. Ct. 3092, 111 L. Ed. 2d 606 (1990); *see also Pulley v. Harris*, 465 U.S. 37, 41, 104 S. Ct. 871, 79 L. Ed. 2d 29 (1984).  Errors in the application of state law, especially rulings regarding the admission or exclusion of evidence, are usually not to be questioned in a federal habeas corpus proceeding.  *Coleman v. Mitchell*, 244 F.3d 533, 542-543 (6th Cir. 2001); *Cooper v. Sowders*, 837 F.2d 284, 286 (6th Cir. 1988).  To be entitled to relief, a petitioner must establish that there has been an infringement of a right guaranteed under the United States Constitution.  *Clemmons v. Sowders*, 34 F.3d 352, 357 (6th Cir. 1994).  As a general rule, an error of state law in the admissibility of evidence does not constitute such a denial and is not cognizable in habeas proceedings.  *Byrd v. Collins*, 209 F.3d 486, 528 (6th Cir. 2000), *cert. denied*, 531 U.S. 1082, 121 S. Ct. 786, 148 L.

---

[11]  As discussed above, these arguments were never ruled upon by the state courts and are procedurally defaulted.

[12]  Rojas also claims that appellate counsel was ineffective for failing to adequately argue those assignments of error he did raise.

Ed. 2d 682 (2001).  Under the AEDPA, the states have wide latitude in ruling on evidentiary matters.  *Seymour v. Walker*, 224 F.3d 542 (6th Cir. 2000), *cert. denied*, 532 U.S. 989, 121 S. Ct. 1643, 149 L. Ed. 2d 502 (2001).  A federal court may not grant a habeas petition merely because it disagrees with the evidentiary rulings of the state courts, but may only do so if the state court's evidentiary rulings were contrary to rulings of the United States Supreme Court on a similar question of law or if the state courts decided the evidentiary issues differently than the Supreme Court in a case with materially indistinguishable facts.  *See, e.g., Sanders v. Freeman*, 221 F.3d 846 (6th Cir. 2000).

As such, Rojas fails to raise cognizable habeas claims by simply questioning the admissibility of certain evidence under Ohio law.  Rojas, however, also claims that appellate counsel was ineffective for failing to raise these claims on direct appeal.  To prove ineffective assistance of appellate counsel, a claimant must show a level of deficient performance that is prejudicial to the defendant under *Strickland*.  *See Ratliff v. United States*, 999 F.2d 1023, 1026 (6th Cir. 1993).  Counsel must provide reasonable professional judgment in presenting the appeal. *See Evitts v. Lucey*, 469 U.S. 387, 396-97, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985). "'[W]innowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy."  *Smith v. Murray*, 477 U.S. 527, 536, 106 S.Ct. 2661, 91 L.Ed.2d 434 (1986), *quoting Jones v. Barnes*, 463 U.S. 745, 751-52, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983).  Failure to raise "significant and obvious" issues on appeal can constitute ineffective assistance of appellate counsel.  *Mapes v. Coyle*, 171 F.3d 408 (6th Cir. 1999). "[No] decision of this Court suggests ... that the indigent defendant has a constitutional right to compel appointed counsel to press nonfrivolous points requested by the

client, if counsel, as a matter of professional judgment, decides not to present those points."

*Jones v. Barnes*, 463 U.S. at 750-54; *United States v. Perry*, 908 F.2d 56, 59 (6ᵗʰ Cir. 1990) (tactical choices are properly left to the sound professional judgment of counsel).  Of course, not every decision made by appellate counsel can be insulated from review merely by categorizing it as strategic.

The Sixth Circuit has identified the following factors to be considered in determining whether counsel on direct appeal performed competently:

A.   Were the omitted issues "significant and obvious?"

B.   Was there arguably contrary authority on the omitted issues?

C.   Were the omitted issues clearly stronger than those presented?

D.   Were the omitted issues objected to at trial?

E.   Were the trial court's rulings subject to deference on appeal?

F.   Did appellate counsel testify in a collateral proceeding as to his appeal strategy and, if so, were the justifications reasonable?

G.   What was appellate counsel's level of experience and expertise?

H.   Did the petitioner and appellate counsel meet and go over possible issues?

I.   Is there evidence that counsel reviewed all the facts?

J.   Were the omitted issues dealt with in other assignments of error?

K.   Was the decision to omit an issue an unreasonable one which only an incompetent attorney would adopt?

*Mapes v. Coyle*, 171 F.3d 408, 427-28 (6ᵗʰ Cir. 1999).  This list is not exhaustive and need not produce a certain "score."  *Id*. at 428.  Lastly, failure of appellate counsel "to raise an issue on appeal is ineffective assistance only if there is a reasonable probability that inclusion of the issue

would have changed the result of the appeal." *Howard v. Bouchard*, 405 F.3d 459, 485 (6th Cir. 2005), *citing Greer v. Mitchell*, 264 F.3d 663 (6th Cir. 2001).

Rojas's arguments are not altogether clear.  Even if this Court could consider the underlying merits of whether the challenged evidence was admissible, Rojas's argument remains meritless.  His argument in ground eight, that Moya's testimony at trial was false, has alreday been addressed.  Rojas merely points to Moya's admission on cross-examination that during his first interviews with the police he was untruthful in order to protect other individuals.  (ECF No. 11-12, Tr. 716.)  Rojas appears to assume that, based on that admission, all of Moya's evidence was false and, therefore, inadmissible.  Rojas cites no authority to support such a novel proposition.

Rojas makes unexplained references to Ohio Rules of Evidence 103(C), 402, 404(B), 608(B)(1), 613(B), and 616.  (ECF No. 1.)  Ohio Evid. R. 103(C) merely states that nothing in the rule "precludes taking notice of plain errors affecting substantial rights although they were not brought to the attention of the court."  Ohio Evid. R. 403 states that irrelevant evidence is generally inadmissible.  The testimony of Moya, a co-conspirator, regarding the crimes for which Rojas and his co-defendant Ramirez were charged can hardly be considered irrelevant. Ohio Evid. R. 404 states that other crimes or bad acts cannot be used to prove the character of a person.  As noted above, the trial court gave explicit instructions to the jury that the evidence elicited concerning "other acts" could not be used to show the character of Rojas or Ramirez, but only for the limited purpose of testing Moya's credibility.  (Tr. 724-25.)  Ohio Evid. R. 608(B)(1) specifically gives courts discretion to allow evidence of specific instances of the conduct of a witness on cross-examination if probative of truthfulness or untruthfulness.  Ohio

-47-

Evid. R. 613 permits impeachment by self-contradiction, while Rule 616 simply lists some methods by which witnesses may be impeached.  Moya's testimony does not plainly violate any of these rules.  As such, appellate counsel cannot be found ineffective for failing to raise these claims.  Furthermore, the essence of these "omitted issues" were raised by appellate counsel in other assignments of error, as appellate counsel touched on these issues when arguing that the trial court erred in its failure to grant a motion to sever, in its failure to declare a mistrial, and in the argument that trial counsel was ineffective.

As to ground nine, it is partially redundant with ground eight.  However, Rojas also complains that the jury heard evidence regarding his DNA being present on a short sleeve cloth item which was recovered from the scene of the attempted murder of a police officer, a crime for which Rojas was not charged in the underlying case.  (ECF No. 1, citing Tr. 899, 924.)  Rojas's counsel, as Rojas himself admits, did not raise an objection.  *Id.*  Appellate counsel did argue in his third assignment of error that trial counsel was ineffective for failing to preserve objections as to the admissibility of certain evidence.  (ECF No. 11-19, Exh. 19 at 29-30.)  Under Ohio law, the issue of "[w]hether the trial court committed reversible error in allowing [the admission of] statements is not ... properly before [an appellate] court, [where a party] did not contemporaneously object to them at trial." *Gable v. Gates Mills*, 2004-Ohio-5719 at ¶33, 103 Ohio St. 3d 449, 456, 816 N.E.2d 1049, 1056 (Ohio 2004); *State v. Pizzillo*, 2002-Ohio-446, 2002 Ohio App. LEXIS 162 (Ohio Ct. App., Jan. 17, 2002) ("Traditionally, the failure to interpose timely objections to evidence will constitute a waiver of those objections.... Nevertheless, a reviewing court may consider plain errors or defects which affect substantial rights even where they were not brought to the attention of the trial court."); *State v. Hanks*,

-48-

2002 Ohio App. LEXIS 162 (Ohio Ct. App. Oct. 31, 2000) (finding that since no objection was made at trial on the use of the impeachment evidence, any claimed error regarding the trial court's decision had not been preserved on appeal.) Given that any challenge to the admission of evidence that was not objected to could only be reviewed for plain error, it was not unreasonable for appellate counsel to raise these arguments through a claim of ineffective assistance of trial counsel.

Therefore, Rojas's contention that he was deprived of the effective assistance of appellate counsel is without merit. Furthermore, because this claim is lacking in merit, it cannot serve to excuse Rojas's procedural default of the claims contained in grounds eight and nine as discussed in Part III, *supra*.

**G. Ground Ten: Motion to Intervene**

In his tenth ground for relief, Rojas argues that the state appellate court violated the Due Process and Equal Protection clauses when it denied his request to add supplemental assignments of error on appeal. (ECF No. 1.)

In denying Rojas's motion to supplement the appellate brief, the state appellate court explained as follows:

> The Ohio Supreme Court has held that "[a] defendant has no right to a 'hybrid' form of representation wherein he is represented by counsel, but also acts simultaneously as his own counsel." *State v. Keenan*, 81 Ohio St.3d 133, 13 8, 689 N.E.2d 929 (1998), *citing McKaskle v. Wiggins*, 465 U.S. 168, 183, 104 S.Ct. 944, 79 L.Ed.2d 122 (1984). *See also State v. Thompson*, 33 Ohio St.3d I, 6, 514 N.E.2d 407, 414 (1987). ("Neither the United States Constitution, the Ohio Constitution nor case law mandates * * * hybrid representation.") Ohio appellate courts, citing *McKaskle*, and *Thompson*, have held that an appellate court is not required to consider a request to allow an appellant who is represented by counsel to also raise issues on appeal *pro se*. *Toledo v. Dandridge*, 6th Dist. No. L-10-1333, 2011-Ohio-37l2, ¶18, and *State v. Westley*, 8th Dist. No. 97650, 2012-Ohio-3571, ¶14. In addition, the Appellate Rules do not provide for such a

request.

(ECF No. 11-23, Exh. 23.)

Rojas points to no clearly established federal law as determined by the United States

Supreme Court suggesting that a criminal defendant has the right to engage in a hybrid form of

representation on appeal.  The Court finds nothing unreasonable about the state appellate court's

application of *McKaskle*, which stated that its prior decisions did "not require a trial judge to

permit 'hybrid' representation ...."  465 U.S. at 183.  While the *McKaskle* decision did not

involve hybrid representation on appeal, it was not unreasonable for the state court to conclude

that *McKaskle* also applied in the context of appeals as of right.  Indeed, a decision from the

United States District Court for Southern Ohio suggests as much.  *See Harris v. Warden,*

*Chillicothe Corr. Inst.*, 832 F. Supp.2d 873, 883 (S.D. Ohio 2011) ("Harris filed his own brief on

appeal and there is no constitutional right to hybrid representation, with a defendant representing

himself and also having counsel.")  Recently, the Sixth Circuit has expounded on the fact that

there is no constitutional right to hybrid representation and even explained that a habeas

petitioner has no right to hybrid representation while filing a habeas petition.

> Sixth Circuit caselaw is clear that a criminal defendant does not have a
> constitutional right to "hybrid representation."  *United States v. Mosely*, 810 F.2d
> 93, 98 (6th Cir.1987).  A defendant has a constitutional right to be represented by
> counsel or to represent himself during his criminal proceedings, but not both. *Id*.
> at 97 (citing *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562
> (1975)).  The Sixth Circuit explained: "The right to defend *pro se* and the right to
> counsel have been aptly described as two faces of the same coin, in that waiver of
> one constitutes a correlative assertion of the other." *Id*. at 97-98 (quoting *United*
> *States v. Conder*, 423 F.2d 904, 908 (6th Cir.1970)) (internal quotation marks
> omitted).  Hybrid representation is generally prohibited because it increases the
> risk of undue delay, jury confusion, and conflicts as to trial strategy. *Id*. at 98.
> When counsel has "performed in a highly competent and professional manner"
> and the defendant has been "given ample time to consult with his counsel over
> strategy," it is not an abuse of a court's discretion to prohibit hybrid

representation. *Id.*

> A habeas petitioner has neither a constitutional right nor a statutory right to hybrid representation. *See* 28 U.S.C. § 1654 ("In all courts of the United States the parties may plead and conduct their own cases *personally or by counsel*....") (emphasis added). However, because a court has broad discretion to determine who practices before it, a court may consider a *pro se* petition even when a habeas petitioner is represented by counsel. Here, the issue presented in Miller's *pro se* supplemental brief, that the district court erred in denying him leave to amend his habeas petition, appears to have merit. Therefore, we will, in our discretion, consider Miller's *pro se* arguments despite the fact that he is represented by counsel on appeal.

*Miller v. United States*, 561 F. App'x 485, 488-89 (6th Cir. 2014) (emphasis in original).

Again, while *Miller* addressed the availability of hybrid representation at trial and during the filing of a habeas petition, the principle is clear that such a right simply does not exist at any stage of criminal proceedings. Although courts are not prohibited from considering *pro se* filings even where a defendant/appellant is represented by counsel, no clearly established federal law *requires* a court to do so. To the extent Rojas believes he was permitted to intervene under state law, such an error, even if presumed, would not entitle him to habeas relief. Habeas corpus relief does not lie for errors of state law. Moreover, Rojas's argument, that Ohio Civil Rule 24(A)(2) addresses "intervention as of right," simply has no application to the rules of criminal or appellate procedure.

Rojas's tenth ground for relief is, therefore, without merit.

### V. Motion to Expand Record

On July 17, 2014, Rojas filed a "Motion to Expand the Record and Motion for Evidentiary Hearing, and/or Motion for Leave to Compel Discovery." (ECF No. 12.) On July 17, 2014, Respondent filed a brief opposing the motion. (ECF No. 14.) Essentially, Rojas seeks two videos and photographs from the robberies that were part of the evidence of record

submitted to the jury.  (ECF No. 12.)  Rojas believes one video will show that Moya falsely

identified Rojas in place of himself, and that the falsity of the identification is obvious based on

Rojas being six inches shorter than Moya.  (ECF No. 12 at 1.)  Rojas believes the second video

will show that the fired gunshots at the bank were directed above and not directly at the bank's

employees.  *Id.*

      Rule 7 of the Rules Governing § 2254 cases permits a court to direct the parties to expand

the record.  Nonetheless, a habeas petitioner, unlike the usual civil litigant in federal court, is not

entitled to discovery as a matter of ordinary course. *Bracy v. Gramley*, 520 U.S. 899, 904 (1997).

Rather, discovery in a federal habeas proceeding is governed by Rule 6 of the Rules Governing §

2254 Cases in the United States District Courts, which provides that:

> A party shall be entitled to invoke the processes of discovery available under the
> Federal Rules of Civil Procedure if, and to the extent that, the judge in the
> exercise of his discretion and for good cause shown grants leave to do so, but not
> otherwise.

*See* Rule 6(a) of the Rules Governing § 2254 Cases in the United States District Courts.

      Under this Rule's "good cause" standard, a federal court should grant leave to conduct

discovery in a habeas proceeding "only where specific allegations before the court show reason

to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he

is . . . entitled to relief."  *Bracy*, 520 U.S. at 908-09 (quoting *Harris v. Nelson*, 394 U.S. 286, 300

(1969)).  The burden of demonstrating the materiality of the information requested is on the

moving party.  *See Williams v. Bagley*, 380 F.3d 932, 974 (6th Cir. 2004).  Although a petitioner

is not required to demonstrate that discovery would unquestionably lead to relief, "vague and

conclusory assertions are not sufficient under Rule 6 and a petitioner may not embark on a

fishing expedition intended to develop claims for which there is no factual basis."  *Payne v. Bell*,

89 F.Supp.2d 967, 970 (W.D. Tenn. 2000); *see also Williams*, 380 F.3d at 974.

The Court finds Rojas has failed to demonstrate "good cause" to conduct discovery. Although Rojas argues that the videos and pictures are relevant, the Court finds, upon careful consideration, that the requested discovery is not necessary to resolve the issues raised by the Petition and/or Traverse, as the evidence was considered by the jury and it is not this Court's function to usurp the jury's role as the finder of fact.

Therefore, Rojas's motion (ECF No. 12) is DENIED.

## VI.  Conclusion

For the foregoing reasons, it is recommended that Rojas's Petition be DENIED.

/s/ Greg White_____
U.S. MAGISTRATE JUDGE

Date: December 11, 2014

## OBJECTIONS

**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).**